# EXHIBIT A

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

**C0787**
**LINCOLN & SOUTHLAKE**
**MERRILLVILLE, IN**

**GROUND LEASE**

**BETWEEN**

**CROSSINGS AT HOBART-I, LLC**

**(LANDLORD)**

**AND**

**RAISING CANE'S RESTAURANTS, L.L.C.**

**(TENANT)**

**EFFECTIVE DATE**

_July 30_ , **2021**

C0787-LINCOLN & SOUTHLAKE, MERRILLVILLE, IN—GROUND LEASE
106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 018

Copy from re:SearchTX

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 1. | FUNDAMENTAL TERMS | 1 |
| 2. | DESCRIPTION OF PROPERTY | 4 |
| 3. | TERM | 5 |
| 4. | HOLDOVER | 6 |
| 5. | RENT | 6 |
| 6. | TENANT'S USE | 7 |
| 7. | TENANT'S CONDUCT OF BUSINESS | 7 |
| 8. | MAINTENANCE | 8 |
| 9. | ALTERATIONS DURING TERM | 9 |
| 10. | NON-DISTURBANCE AND ATTORNMENT | 10 |
| 11. | RESTRICTIVE COVENANT | 10 |
| 12. | REAL ESTATE TAXES | 12 |
| 13. | INSURANCE | 12 |
| 14. | LANDLORD'S TITLE AND QUIET ENJOYMENT | 14 |
| 15. | DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS | 14 |
| 16. | LIENS | 15 |
| 17. | TENANT'S EQUIPMENT AND SUBORDINATION OF LANDLORD'S LIEN | 15 |
| 18. | LEASEHOLD MORTGAGE | 16 |
| 19. | TENANT ASSIGNMENT AND SUBLETTING | 16 |
| 20. | LANDLORD ASSIGNMENT | 17 |
| 21. | PARKING AND CROSS ACCESS | 17 |
| 22. | TENANT'S DEFAULT | 18 |
| 23. | LANDLORD'S DEFAULT | 20 |
| 24. | CONDEMNATION | 21 |
| 25. | COSTS AND ATTORNEYS' FEES | 22 |
| 26. | NOTICES | 22 |
| 27. | HAZARDOUS SUBSTANCES | 23 |
| 28. | ESTOPPEL CERTIFICATE | 24 |
| 29. | INDEMNIFICATION | 24 |
| 30. | REPRESENTATIONS AND WARRANTIES | 24 |
| 31. | RIGHT OF FIRST OFFER | 25 |
| 32. | RIGHT OF FIRST REFUSAL | 26 |
| 33. | MISCELLANEOUS | 27 |

EXHIBIT LIST:

| | |
|---|---|
| Exhibit A: | Legal Description of the Property |
| Exhibit A-1: | Site Plan of the Shopping Center |
| Exhibit B: | Development and Construction |
| Exhibit B-1: | Site Plan of the Property |
| Exhibit B-2: | Elevations for Improvements |
| Exhibit B-3: | Sign Elevations |
| Exhibit B-4: | Landlord's Work |
| Exhibit B-5: | Tenant Self-Help Area |
| Exhibit B-6: | Building Envelope |
| Exhibit C: | Form of Memorandum of Lease |
| Exhibit D: | Form of Lease Term and Rent Schedule Agreement |
| Exhibit E: | Form of Subordination, Non-Disturbance and Attornment Agreement |
| Exhibit F: | Intentionally Omitted |
| Exhibit G: | Form of Estoppel Certificate |

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

i

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## GROUND LEASE

THIS GROUND LEASE ("Lease") is made by and between **CROSSINGS AT HOBART-I, LLC**, a Delaware limited liability company ("Landlord"), and **RAISING CANE'S RESTAURANTS, L.L.C.**, a Louisiana limited liability company ("Tenant").

1.      **FUNDAMENTAL TERMS**.

(a)     Fundamental Terms.  The following is a summary schedule of certain fundamental terms of this Lease:

(i)     Landlord Address:     **Crossings At Hobart-I, LLC**
**4300 E. 5th Ave**
**Columbus, Ohio 43219**
**Attn: EVP of Leasing**
**Email: mark.ungar@spgroup.com**

with a copy to:     **Crossings at Hobart I LLC.**
**4300 E. 5th Avenue**
**Columbus, Ohio 43219**
**Attn: General Counsel**
**Email: tod.friedman@spgroup.com**

with a copy to:     **Crossings at Hobart I LLC**
**4300 E. 5th Avenue**
**Columbus, Ohio 43219**
**Attn: Lease Administration**
**Email: marlene.brisk@spgroup.com**

(ii)     Tenant Address:     **Raising Cane's Restaurants, L.L.C.**
**6800 Bishop Road**
**Plano, TX 75024**
**Attn: Real Estate Department**
**Email:  realestate@raisingcanes.com**
**Re:     C0787**

with a copy to:     **Dawn M. Rawls, Esq.**
**Rawls Law Firm, PLLC**
**315 S. Jupiter Road, Suite 200**
**Allen, TX 75002**
**Email:  dawn@rawlslaw.com**
**Re:     C0787**

Additional Tenant Notice Party for any Invoice Sent by Landlord to Tenant for Payment:

C0787- MERRILLVILLE, IN
GROUND LEASE

1

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

**Raising Cane's Restaurants, L.L.C.**
**6800 Bishop Road**
**Plano, TX 75024**
**Attn: Accounts Payable**
**Email: accountinginvoices@raisingcanes.com**
**Re:    C0787**

(iii)   Address for Rent:   **Crossings at Hobart -I LLC**
**Dept. L-3795**
**Columbus, Ohio  43260-3795**

(iv)   Landlord's Account Information for ACH Deposit: To be provided by Landlord to Tenant following the Effective Date.

(v)   Notices: Shall be sent to the addresses set forth above in accordance with the terms of Section 26 of this Lease.

(vi)   Effective Date: As used herein, the term "Effective Date" shall be defined as the business day after the date of the last signatory hereto.

(vii)   Rent Commencement Date: The "Rent Commencement Date" shall be the earlier of (a) the day after the last day of the Construction Period, or (b) the date Tenant opens for business on the Property.

(viii)   Term: As used herein, the "Term" shall collectively mean the Primary Term and all elected Extensions.

(ix)   Primary Term: **Fifteen (15) Lease Years.**

(x)   Extension(s):   **Five (5) - five (5) year renewal options.**

(xi)   Ground Rent:   **Lease Years 1-5:   $135,000.00 per year**
**Lease Years 6-10:   $148,500.00 per year**
**Lease Years 11-15: $163,350.00 per year**

(xii)   Ground Rent for
Extension(s):   **Lease Years 16-20: $179,685.00 per year**
**Lease Years 21-25: $197,653.50 per year**
**Lease Years 26-30: $217,418.85 per year**
**Lease Years 31-35: $239,160.74 per year**
**Lease Years 36-40: $263,076.81 per year**

(xiii)   Lease Year: As used herein, the term "Lease Year" shall be defined as a successive twelve (12) month period during the Primary Term or any Extension

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

2

Plaintiff's Original Petition - Page 021

Copy from re:SearchTX

commencing, with respect to the first Lease Year, on the Rent Commencement Date, or with respect to any subsequent Lease Year, commencing on the anniversary of the Rent Commencement Date; provided, however, that if the Rent Commencement Date is a day other than the first day of a calendar month, then the first Lease Year shall include that period of time from the Rent Commencement Date up to the first day of the next calendar month and the following twelve (12) months, and any subsequent Lease Year shall be the twelve (12) month period beginning on the anniversary of the first day of the next calendar month following the Rent Commencement Date.

(xiv)   Lease Month: As used herein, the term "Lease Month" shall be defined as those successive calendar month periods beginning with the Rent Commencement Date and continuing through the Primary Term or any Extension of this Lease; provided, however, if the Rent Commencement Date is a day other than the first day of a calendar month, then the first Lease Month shall include that period of time from the Rent Commencement Date up to the first day of the next calendar month, and each subsequent Lease Month shall be a calendar month period beginning on the first day of each succeeding calendar month.

(xv)    Improvements: As used herein, the term "Improvements" shall be defined as the building ("Building") and all other improvements including, but not limited to, grading, utility connections and/or relocations, sidewalks, landscaping, asphalt paving, lighting and approved pylon and/or monument signage (excluding panels) placed upon the Property by Tenant.

(xvi)   Inspection Period: One Hundred (100) days beginning the first business day after the Effective Date (the "Inspection Period"). If any lender or lienholder of Landlord has a lien on the Property as of the Effective Date ("Existing Lender") and such Existing Lender has not delivered an executed SNDA (as defined in Section 10) by the sixtieth (60th) day of the Inspection Period, then the Inspection Period shall be extended by a period equal to the number of days after such sixtieth (60th) day delivery of the executed SNDA is delayed.   Tenant's rights and obligations during the Inspection Period are set forth in *Exhibit B*.

(xvii)  Permit Period: Ninety (90) days beginning the first business day after the last day of the Inspection Period (the "Permit Period"). If Tenant is unable to obtain its Permits or Authorizations (as defined in *Exhibit B*) for demolition, if applicable, and construction despite Tenant's commercially reasonable diligence and good faith efforts during said initial 90-day period, the Permit Period will be extended for up to two (2) additional successive 30-day periods for the purpose of Tenant meeting any additional requirements for obtaining its Permits or Authorizations by providing Landlord written notice on or prior to the last day of the then-current period.   Tenant's rights and obligations during the Permit Period are set forth in *Exhibit B*.

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94G3-07BF2E382FDF

(xviii)  Construction Period:  One hundred eighty (180) days beginning the business day after the Actual Delivery Date (as defined in **Exhibit B**) (the "Construction Period").  Tenant's rights and obligations during the Construction Period are set forth in **Exhibit B**.  Notwithstanding anything in the previous sentence to the contrary, in order to account for winter conditions, if the first day of the Construction Period as calculated by the previous sentence falls on a date between December 1 of one year and March 31 of the following year, then the Construction Period shall not begin until the earlier of (i) the next April 1  or (ii) the first day of Tenant's actual construction activities on the Property.

(b)    Exhibits.  The following exhibits (each, an "Exhibit") are attached hereto and, by this reference, incorporated herein:

| | |
|---|---|
| Exhibit A: | Legal Description of the Property |
| Exhibit A-1: | Site Plan of the Shopping Center |
| Exhibit B: | Development and Construction |
| Exhibit B-1: | Site Plan of the Property |
| Exhibit B-2: | Elevations for Improvements |
| Exhibit B-3: | Sign Elevations |
| Exhibit B-4: | Landlord's Work |
| Exhibit B-5: | Tenant Self-Help Area |
| Exhibit B-6: | Building Envelope |
| Exhibit C: | Form of Memorandum of Lease |
| Exhibit D: | Form of Lease Term and Rent Schedule Agreement |
| Exhibit E: | Form of Subordination, Non-Disturbance and Attornment Agreement |
| Exhibit F: | Intentionally Omitted |
| Exhibit G: | Form of Estoppel Certificate |

## 2.    DESCRIPTION OF PROPERTY.

(a)    In consideration of the mutual covenants contained herein, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord that parcel of land located in the City of Merrillville, State of Indiana, and more particularly described in **Exhibit A**, together with all rights, easements and appurtenances belonging or appertaining to the land, and all right, title and interest of Landlord in and to any and all roads, streets, alleys and public and private rights of way bounding the land (the land and rights described above are collectively called the "Property"). In furtherance of the leasing of the Property as provided in the foregoing sentence, Landlord also allows Tenant to utilize, from the Effective Date through the end of the Term of this Lease, all right, title and interest Landlord has under that certain Easement for Parking Lot, Utility Crossovers and Driveways recorded on September 15, 1989 in the Recorder's Office of Lake County, Indiana ("Recorder's Office") as Instrument No. 058076, as modified by Amendment to Parking Lot, Utility Crossovers and Driveways Easement Agreement recorded on June 7, 1990 in the Recorder's Office as Instrument No. 104644, as modified by Amendment of Easement for Parking Lot, Utility Crossovers and Driveways recorded on September 20, 1994 in the Recorder's

Copy from re:SearchTX

Office as Instrument No. 94067966 (collectively, the "Parking Lot and Building Easement"). Final dimensions of the Property shall be established by the survey contemplated by *Exhibit B*, and to the extent necessary *Exhibit A* shall then be modified by amendment to set forth such final dimensions. The Property is part of a shopping center currently known as "The Crossings at Hobart" Shopping Center (the "Shopping Center"). The Shopping Center is depicted on the site plan attached as *Exhibit A-1*.

From the Effective Date until the expiration or earlier termination of this Lease, Landlord shall indemnify, defend and hold Tenant harmless against and from any and all claims, demands, liabilities, liens, obligations, settlement payments, penalties, costs, expenses, assessments, citations, directives, claims, litigation, demands, defenses, judgments, suits, proceedings, disbursements of any kind or of any nature whatsoever (including, without limitation, reasonable attorneys', consultants' and experts' fees and disbursements incurred in investigating, defending against, settling or prosecuting any claim, litigation or proceeding, including, without limitation, any request for injunctive relief or request for a declaratory judgment) which may at any time be imposed on, incurred by or asserted against Tenant in any way relating to or arising out of, directly or indirectly, a violation, breach or default or an alleged violation, breach or default under the Parking Lot and Building Easement due to Tenant's use of a drive-through and any drive-through facilities on the Property. In the event any claim, action or other proceeding for which indemnity will be required pursuant to this Section 2(a), Landlord's choice of legal counsel shall be subject to Tenant's approval, which such approval shall not be unreasonably withheld, conditioned or delayed.

(b)     The Property is leased to Tenant, "as is, where is," without warranty or representation of Landlord except as expressly set forth in this Lease. The completion of the Inspection Period without Tenant exercising its right to terminate this Lease conclusively establishes that Tenant accepts the Property in its then "as is, where is" condition and that the Property is at such time in satisfactory condition and in conformity with the provisions of this Lease in all respects.

(c)     Tenant shall be and remain owner of all Improvements erected throughout the Term of this Lease. Landlord shall become owner of all Improvements at the end of the Term of this Lease.

## 3.     TERM.

(a)     The primary term of fifteen (15) Lease Years, as set forth in Section 1(a)(ix) (the "Primary Term"), shall commence on the Rent Commencement Date, unless this Lease is sooner terminated pursuant to the terms of this Lease. It is understood that the Primary Term will be exactly fifteen (15) years in length only if the Rent Commencement Date falls on the first day of the month; in all other cases the Primary Term will be fifteen (15) years plus the partial month that begins on the Rent Commencement Date. Landlord and Tenant agree to execute and record a written Memorandum of Lease, substantially in the form of *Exhibit C* ("Memorandum of Lease") after all of Tenant's contingencies have been waived. Each party further agrees once the Rent Commencement Date is ascertained, to execute a Lease Term and Rent Schedule Agreement

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

substantially in the form of *Exhibit D*, no later than ten (10) days after written request from the other party.

(b)  Provided Tenant is not in default hereof, the Term of this Lease may be extended for five (5) additional periods of five (5) years each ("Extension(s)"), commencing at midnight on the date on which the Primary Term or any preceding Extension expires. Each Extension shall be automatic and the parties shall be bound by this Lease for such Extension unless Tenant gives Landlord notice, at least one hundred eighty (180) days prior to the expiration of the Primary Term or the current Extension, that Tenant does not intend any further Extension to occur, in which case the Primary Term or the current Extension shall expire at the end of such Primary Term or such current Extension.

4.  **HOLDOVER**. Upon the termination or expiration of this Lease, Tenant agrees to quit and surrender the Property and Improvements, "broom clean," in good condition and repair (reasonable wear and tear excepted) together with all alterations, additions and improvements that may have been made. For purposes hereof, "reasonable wear and tear" does not include damage or deterioration resulting from the failure of Tenant to observe good maintenance practice or to otherwise perform all of its obligations under this Lease. Notwithstanding the foregoing, upon the termination or expiration of this Lease, so long as Tenant is not in default of this Lease, Tenant may remain on the Property for a period of thirty (30) days at the same rental rate as that in effect prior to the termination or expiration in order to remove Tenant's Equipment (as defined in Section 17) and to de-identify the Improvements. In the event Tenant continues to occupy the Property after the last day of such 30-day period, Tenant's continued occupancy shall be deemed to be a tenancy-at-will (and not a tenancy from month-to-month or from year-to-year) cancelable by Landlord upon 48 hours prior written notice, and such tenancy shall be subject to all of the provisions of this Lease, except Ground Rent, as set forth in Sections 1(a)(xi) or 1(a)(xii) above ("Ground Rent") for any such holdover period shall equal one hundred twenty-five percent (125%) of the Ground Rent due immediately prior to such holdover period.

5.  **RENT**.

(a)  As used herein, the term "Rent" shall consist of Ground Rent plus any other amounts due and payable under this Lease as set forth herein ("Additional Rent"). Tenant's obligation to pay Rent to Landlord shall commence on the Rent Commencement Date. Rent, other than Additional Rent unless expressly set forth in this Lease, shall be payable in equal monthly installments in advance, without demand and without offset or deduction except as explicitly set forth in this Lease, with the first monthly installment payment made no later than on the first day of the calendar month following the Rent Commencement Date (or on the Rent Commencement Date if the Rent Commencement Date is the first day of a calendar month), and each subsequent installment thereafter on the first day of each and every calendar month during the Primary Term and any Extension. If the Rent Commencement Date is any day other than the first day of a calendar month, the Rent for the first partial Lease Month shall be prorated for the number of days in such partial Lease Month based on the actual number of days in such month. Additional Rent shall be due at the times set forth for such items in this Lease. As a condition to Tenant's obligation to pay Rent pursuant to the terms herein, Landlord shall deliver an executed IRS Form W-9 to

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Tenant within ten (10) business days after the first day of the Construction Period. In the event Landlord fails to timely deliver an executed IRS Form W-9, Tenant's obligation to pay the initial monthly installment of Rent and any subsequent installments thereof shall be tolled until the first day of the calendar month following Tenant's receipt of same, and upon such date, Tenant shall be required to pay all tolled amounts of Rent which shall be equal to the original amounts due pursuant to the terms of this Lease without any interest or penalty.

(b)      Notwithstanding anything set forth in this Lease to the contrary, Landlord and Tenant acknowledge and agree that Tenant shall not be obligated to reimburse or pay Landlord or any other third party for any other costs or expenses incurred or assessed against the Property in connection with maintaining, repairing or insuring the Common Areas (as defined in Section 8) or any other improvements outside of the Property, whether pursuant to the Permitted Encumbrances (as defined in *Exhibit B*) or any other instrument of record.

(c)      Should any payment of Rent be late, the provisions of Section 22(c) shall apply.

6.      **TENANT'S USE.** Subject to any existing exclusives and restrictions contained in leases or otherwise granted by Landlord to other tenants in the Shopping Center, as well as any Permitted Encumbrance (as defined in *Exhibit B*), Tenant shall use the Property only for the construction and operation of a free-standing quick-service restaurant, including, but not limited to, a drive-through and dine-in and/or outdoor patio dining service facility and for no other purpose ("Tenant's Use"). Any change in Tenant's Use requires Landlord's prior written consent, which consent shall not be unreasonably withheld, delayed or conditioned.

7.      **TENANT'S CONDUCT OF BUSINESS.**

(a)      It is Tenant's intention to open for business in the Property as soon as possible following completion of its construction, but in all events Tenant shall open for business for at least one (1) day within three hundred sixty-five (365) days after Tenant receives its certificate of occupancy, which Tenant shall diligently pursue. Except as set forth in the preceding sentence, no term or provision of this Lease shall be construed as creating an obligation for Tenant to open or operate its business in the Property. However, in the event Tenant ceases operations on the Property for more than ninety (90) consecutive days (except in the event of casualty, condemnation, renovation, or force majeure, provided any such period does not exceed two hundred ten (210) days), Landlord shall have the right to terminate this Lease by providing written notice to Tenant of same at any time thereafter. In the event Landlord delivers such notice to Tenant, this Lease will terminate upon Landlord paying to Tenant the unamortized cost of its Improvements (i.e., then book value), which cost shall be considered amortized on a straight-line basis over a period of fifteen (15) years, and once so terminated this Lease shall have no further force and effect and the parties shall have no further obligations to each other hereunder other than those obligations which expressly survive the termination of this Lease. Subject to Landlord's right to recapture the Property as set forth above, Tenant shall have the right to remove Tenant's Equipment and cease operations in the Property at any time and from time to time and at Tenant's sole discretion. However, the right to cease to operate its business shall not affect Tenant's obligation to pay all amounts of Rent and any other amounts due hereunder and to perform all

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

7

Copy from re:SearchTX

DocuSign Envelope ID: F92561C7-2026-4D10-94C3-07BF2E382FDF

covenants and obligations hereunder. Tenant shall not be prevented from, and shall not be liable to Landlord for damages as a result of, operating other restaurants in the area surrounding the Property or any other area, nor shall Tenant be limited or restricted in any way from opening or operating other restaurants in the area surrounding the Property or any other area.

(b)     Tenant agrees, at its sole expense, to promptly comply with and observe all requirements of law at any time in force during the Term that are applicable to Tenant, the Property, the Improvements, the contents thereof or the activities therein, including, without limitation, statutes, ordinances, codes, rules, regulations, zoning stipulations, use permits, discretionary approvals, conditional use permits, business licenses and other legal directives. Tenant also agrees to comply at its expense with all requirements of any board of fire underwriters (or of any governmental body having similar functions) or of any liability or fire insurance company insuring Landlord or Tenant at any time during the Term. If any alterations, additions, improvements or changes to the Property or the Improvements are necessitated by reason of any of the foregoing, whether arising out of Tenant's specific use or occupancy, the general use, occupancy or condition of the Property or the Improvements, and whether the useful life thereof will exceed the remaining Term, including, without limitation, the installation of fire extinguishing systems and equipment, or compliance with the Americans With Disabilities Act, Tenant must perform such alterations, additions, improvements and changes at its own expense, but subject to Section 9.

(c)     Notwithstanding anything set forth in this Lease to the contrary, beginning on the Rent Commencement Date, in the event Northern Indiana Public Service Company, or its successors and assigns ("NIPSCO") exercises any entry rights of grantor under the Parking Lot and Building Easement or as fee owner of the easement property and materially interferes with Tenant's business operations on the Property or the building easement granted under the Parking Lot and Building Easement, then upon written notice from Tenant to Landlord regarding same, Tenant shall be entitled to abate the entire amount of Ground Rent payable each month or partial month during the period in which there is such material interference.

## 8.     MAINTENANCE.

(a)     Tenant covenants and agrees, at its sole cost and expense, at all times from and after the Actual Delivery Date (as defined in *Exhibit B*) and throughout the Term to maintain, repair, replace, and keep the Property and the Improvements in first class condition, commensurate with like businesses, and in a state of good repair, excepting normal wear and tear ("Tenant Maintenance"). Such obligations include, without limitation, responsibility for any defects or problems with the structural components, roof, electrical, water, air ventilating, heating, air conditioning, sewerage, and other equipment and mechanical systems. Landlord shall have no maintenance, replacement or repair obligations with respect to the Property or the Improvements from the Actual Delivery Date through the Term. Tenant agrees to pay before delinquency all charges for water, gas, heat, electricity, power, telephone, trash, garbage and rubbish removal, sewer, and all other services or utilities used on the Property by Tenant from and after the Effective Date. Landlord is not liable in damages or otherwise for any failure or interruption of any utility supplied to the Property and no such failure constitutes a constructive or actual eviction or a breach

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-262B-4D10-84C3-07BF2E382FDF

of any covenant for quiet enjoyment or of any other covenant of Landlord contained in this Lease, or entitles Tenant to an abatement of Rent or to terminate this Lease.

(b)    Except for the Property and all Tenant Maintenance obligations, Landlord shall be responsible for maintaining the common areas and common facilities made available from time to time by Landlord in or about the Shopping Center, but excluding any portion of the Property (collectively, the "Common Areas") in first class condition, commensurate with like businesses, and in a state of good repair, excepting normal wear and tear, which shall be subject to the exclusive control and management of Landlord.

(c)    If Landlord fails to maintain any portion of the Common Areas within that area designated as the "Tenant Self-Help Area" on *Exhibit B-5* attached hereto in accordance with Section 8(b) within fifteen (15) days after written notice from Tenant (or such additional period, if any, as may be reasonably required to cure such failure, provided that Landlord commences to cure the failure within such 15-day period and thereafter diligently pursues such cure to completion), Tenant shall have the right, but not the obligation, to perform any necessary work or furnish any necessary materials or services to cure such failure by Landlord.  In the event Tenant cures a failure by Landlord under this Section 8(c), Landlord shall reimburse Tenant for all reasonable costs and expenses incurred by Tenant in connection with such curative action within thirty (30) days after Landlord's receipt of an invoice for same from Tenant.  If Landlord does not reimburse Tenant for the full amount owed in connection with Tenant's curative action within said 20-day period, then Tenant shall have the right to offset any unpaid amounts against Ground Rent, plus interest at the rate set forth for late payments in Section 22, until fully recovered.

**9.    ALTERATIONS DURING TERM**.  Following the construction of the Improvements as governed by the terms of *Exhibit B*, the following terms shall apply:

(a)    Subject to Landlord's prior written approval, which shall not be unreasonably withheld, conditioned or delayed, during the Term, Tenant shall have the right, but no obligation, to alter, renovate, add, remodel, modify and/or change the Improvements as Tenant may deem desirable; provided, however, Tenant shall be entitled to make any interior alterations, exterior non-structural alterations and any landscaping changes (so long as such changes do not affect the visibility of the Shopping Center) without Landlord's prior written approval.  Further, unless the Property is subject to center-match design criteria, Landlord may not unreasonably withhold consent for renovations and alterations to the Improvements in keeping with Tenant's national prototype updates.  Any request for alteration and Landlord denial that increases the building area or height shall not be deemed to be unreasonable.

(b)    Prior to commencing any alteration work requiring Landlord's prior written approval hereunder, Tenant must submit to Landlord for approval (1) details of the proposed work reasonably satisfactory to Landlord and (2) evidence reasonably satisfactory to Landlord that Tenant has obtained, at its own expense, all necessary consents, permits and licenses from all governmental authorities having jurisdiction.

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

9

Copy from re:SearchTX

DocuSign Envelope ID: F92861C7-2028-4D70-94C3-07BF2E382FDF

(c)      All alteration work described in Section 9(b) above must be performed (1) at the sole expense of Tenant; (2) by licensed and competent contractors and workmen; (3) in a good and workmanlike manner, and using materials properly fit for the purpose; (4) in accordance with applicable law and all Permitted Encumbrances (as defined in *Exhibit B*); and (5) in such manner as does not void any contractor's, manufacturer's or supplier's warranties existing in favor of Landlord.

**10.      NON-DISTURBANCE AND ATTORNMENT.** Landlord will obtain from any Existing Lender, if applicable, and any future lender having a lien on the Property (such future lender and any Existing Lender each being referred to herein as "Landlord's Lender"), an agreement acceptable to Tenant in recordable form and substantially similar to the form of *Exhibit E*, or such other commercially reasonable form that Lender will agree to, wherein Landlord's Lender agrees, so long as Tenant is not in default under this Lease, not to disturb Tenant's possession of the Property or the Improvements, deprive Tenant of any rights or increase Tenant's obligations under this Lease and by which Tenant agrees to attorn to Landlord's Lender ("SNDA"). In addition, Landlord's Lender shall also agree pursuant to the SNDA that (i) the deed of trust, mortgage or interest shall not cover or encumber and shall not be construed as subjecting in any manner to the lien thereof any of the Improvements or any of Tenant's Equipment and (ii) if the Property or any part thereof shall be taken for public purposes by condemnation or transfer in lieu thereof, or all or any portion of the Improvements are damaged or destroyed, the rights of Landlord, Tenant and Landlord's Lender to any condemnation award or insurance proceeds in connection with the Improvements shall be determined and controlled by the applicable provisions of this Lease. In the event Landlord provides an SNDA pursuant to the terms of this Section 10, Tenant will agree upon request to subordinate this Lease to any future deed of trust, mortgage or encumbrance.

**11.      RESTRICTIVE COVENANT.**

(a)      Subject to existing tenants' use provisions described further in Section 11(c) below, as a material inducement for Tenant to enter into this Lease, Landlord acknowledges and agrees that no property presently or hereafter owned, leased or controlled with a fifty-one percent (51%) or more ownership interest by Landlord or Landlord Affiliate within the Shopping Center (the "Restricted Property") shall be sold, leased, managed, used or occupied for a fast food or quick service restaurant (including mobile or temporary food service trucks or kiosks) which prepares, serves or sells de-boned chicken products, such as, but not limited to, Chick-Fil-A, Abner's, Guthrie's, Zaxby's, PDQ, Slim Chickens, Layne's Chicken Fingers, or any other restaurant or food chain which specializes in and whose sales are primarily derived from the sale of de-boned chicken products (a "Competing Use"). However, the Restricted Property may be used as or sold or leased for use as a restaurant specializing in the sale of bone-in chicken wings or a sports-bar-themed restaurant even though such establishment prepares, serves or sells de-boned chicken products, or a restaurant or food service establishment (including mobile or temporary food service trucks or kiosks) which prepares, serves or sells de-boned chicken products, so long as such sales are incidental to the sale of its other products. As used herein, the term "incidental" shall mean that any such owner, tenant or occupant shall not derive more than forty percent (40%) of its annual gross sales from the sale of de-boned chicken products. The restrictive covenant set forth in this Section 11 (the "Restrictive Covenant") shall be included in the Memorandum of Lease

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

10

Copy from re:SearchTX

encumbering all Restricted Property and Landlord shall be subject to a continuing obligation to deliver similar documentation in recordable form to bind property subsequently acquired, leased or controlled by Landlord or a Landlord Affiliate as provided herein.

(b)      For purposes of this Section 11, "Landlord Affiliate" shall mean any person or entity that, directly or indirectly through one or more intermediaries, controls Landlord, is controlled by Landlord or is under common control with those persons and entities controlling Landlord, and "control" shall mean having, directly or indirectly through one or more intermediaries, greater than fifty percent (50%) of the ownership or voting power of such entity to direct or cause the direction of the management and policies of such entity, whether through ownership interest, by contract or otherwise.  If any Restricted Property is presently or hereafter owned, leased or controlled by a Landlord Affiliate pursuant to the terms herein, then Landlord shall cause such Landlord Affiliate to execute a joinder to the Memorandum of Lease, or an amendment thereto, and any other documents reasonably necessary to subject the Restricted Property of such Landlord Affiliate to the Restrictive Covenant.

(c)      Notwithstanding anything to the contrary set forth in this Section 11, it shall not be a breach of the Restrictive Covenant if (i) any otherwise Restricted Property is used for a Competing Use as of the Effective Date of this Lease, but only for the term of such existing lease or occupancy agreement (including any extensions or renewals thereof) and provided Landlord or any Landlord Affiliate does not consent to a change of use under any existing lease or occupancy agreement that would result in use as a Competing Use, or (ii) Landlord or a Landlord Affiliate subsequently acquires, leases, manages or controls otherwise Restricted Property or business that is then used for a Competing Use, which real property shall be expressly excluded from the Restrictive Covenant, but only for the duration of the use of such Restricted Property by the party utilizing same for the Competing Use at the time of Landlord's or Landlord Affiliate's acquisition.

(d)      In the event of a violation of the terms of the Restrictive Covenant and Tenant is not in default beyond any applicable notice and cure period, Tenant shall be entitled to injunctive relief as well as all other remedies available at law or in equity, Landlord acknowledging and agreeing that Tenant does not have an adequate remedy at law for breach thereof.  Further, in the event Landlord does not cure or cause the cure of a breach of the Restrictive Covenant within thirty (30) days after written notice from Tenant, then Tenant shall be entitled to reduce Ground Rent payable each Lease Month by one-half (1/2) until Landlord cures or causes to cure the breach; provided, however, in the event a breach of the Restrictive Covenant is caused by a "rogue tenant" acting in violation of its lease agreement with Landlord or a Landlord Affiliate, such reduced Ground Rent shall not commence unless and until Landlord fails to cure or cause the cure of such rogue tenant violation within sixty (60) days following Tenant's written notice thereof to Landlord. Notwithstanding anything in this Section 11(d) to the contrary, should a violation of the Restrictive Covenant occur with respect to Restricted Property not then owned, leased or controlled by Landlord or any Landlord Affiliate, then Tenant shall not have a remedy pursuant to this Section 11 against Landlord, Tenant's remedies being solely against the violating owner or occupant under the recorded Memorandum of Lease.

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-D7BF2E382FDF

## 12.    REAL ESTATE TAXES.

(a)    If, for Real Estate Tax purposes, the Property is a distinct and independent tax parcel, then Tenant shall pay before delinquent all real estate taxes and assessments lawfully imposed on the Property or on any Improvements constructed by Tenant on the Property ("Real Estate Taxes"), beginning on the Rent Commencement Date and through the Term, directly to the taxing authority. Landlord will authorize and direct the taxing authority to send the real estate tax bill directly to Tenant at Tenant's address set forth in Section 1(a) of this Lease. A receipted tax bill shall be delivered to Landlord upon written request. In the event any Real Estate Taxes may be payable in installments, Tenant may pay them as the installments become due. Real Estate Taxes shall be prorated on a per diem basis for any partial tax years falling within the Primary Term or any Extensions.

(b)    If, for Real Estate Tax purposes, the Property is not a distinct and independent tax parcel, but is part of a larger tax parcel(s), Landlord agrees to pay when due all Real Estate Taxes with respect to tax parcels which affect both the Property and other property and Tenant agrees to pay a share of the Real Estate Taxes so paid by Landlord calculated by multiplying the Real Estate Taxes paid by Landlord by a fraction, with a numerator equal to the net square footage of the Building and with a denominator equal to the square footage of the gross leasable area of the buildings in the larger tax parcel(s). During any period when the Property is unimproved land, the Real Estate Taxes so prorated shall include only that portion based on the land assessment. Tenant shall pay its share of Real Estate Taxes to Landlord within twenty (20) days after Tenant receives a copy of the tax bill and Landlord's calculation of the amount due from Tenant. Landlord shall deliver to Tenant evidence of the payment of such taxes in the form of a paid tax bill within ten (10) days after Tenant's written request therefor.

(c)    Nothing herein contained shall require Tenant to pay corporation, franchise, income, estate, gift and inheritance taxes or charges imposed on Rent or other similar taxes, charges or impositions which may be levied or assessed against Landlord, any fee owner, or their successor in title.

(d)    If the Property is a separately assessed tax parcel, Tenant shall have the right, at its own cost and expense, to initiate and prosecute any proceedings permitted by law for the purpose of obtaining an abatement of or otherwise contesting the validity or amount of Real Estate Taxes assessed or levied upon the Property and the Improvements, provided that Tenant will not take any action that will cause or allow the institution of foreclosure proceedings. Tenant agrees to permit the reasonable participation by Landlord in any such contest at Landlord's request. If required by law, Tenant may take such action in the name of Landlord who shall cooperate with Tenant to the extent reasonably required by Tenant, but at no out of pocket cost to Landlord.

## 13.    INSURANCE.

(a)    Liability Insurance. Tenant, at its sole expense, shall obtain and maintain from the Effective Date and throughout the Term of this Lease commercial general liability insurance, written on an "occurrence" policy form, with liability limit of One Million and No/100 Dollars ($1,000,000.00) per occurrence and Two Million and No/100 Dollars ($2,000,000.00) in the

C0787- MERRILLVILLE, IN
GROUND LEASE

12

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92581C7-2028-4D10-94C3-07BF2E382FDF

aggregate, covering bodily injury, property damage, personal injury and advertising injury arising out of Tenant's business operations, or use or occupancy of the Property. Landlord, Landlord's Lender and any management company appointed by Landlord to manage the Property shall each be named as an additional insured on the policy by endorsement. The insurance policy includes contractual liability coverage. If in the reasonable opinion of the insurance broker retained by Landlord the amount of liability insurance coverage maintained by Tenant is not adequate, Tenant shall from time to time (but no more frequently than once every five (5) years) increase the insurance coverage as recommended by Tenant's insurance broker. In addition to the above described liability insurance, Tenant will maintain an umbrella policy with limits of no less than Twenty-five Million and No/100 Dollars ($25,000,000.00) per occurrence or in the aggregate.

(b)     Property Insurance.    Tenant, at its sole expense, shall procure and maintain throughout the Term of this Lease property insurance. The property insurance shall be written on a "Special Causes of Loss" (formerly "all risk") policy form and shall provide for one hundred percent (100%) of the replacement cost of the Building. The policy shall be written with no coinsurance, and shall include vandalism and malicious mischief coverage and sprinkler leakage coverage. The proceeds from this policy shall be used by Tenant for the repair or restoration of the Improvements as more fully set forth in Section 15 below. Landlord shall be a loss payee as its interest may appear on the policy. This policy shall include Business Interruption Insurance subject to the deductible, limits, terms and conditions of the policy.

(c)     Workers' Compensation and Employer Liability Coverage.    Tenant, at its sole cost and expense, shall procure and maintain workers' compensation insurance as required by law and employer's liability insurance with limits of One Million and No/100 Dollars ($1,000,000.00) and shall contain a waiver of subrogation in favor of Landlord.

(d)     Commercial Automobile Insurance.    Tenant, at its sole cost and expense, shall procure and maintain commercial automobile insurance throughout the Term of this Lease. This policy will be written with a liability limit of no less than One Million and No/100 Dollars ($1,000,000.00). It shall include Hired and Non-owned coverage.

(e)     Failure to Maintain Insurance.    If Tenant fails to maintain the insurance required under this Lease, which failure shall be deemed to occur if Tenant fails to provide the applicable certificate of insurance to Landlord within five (5) business days after Landlord's written request therefor, then Landlord, in addition to any other right or remedy available to it as a result thereof, shall have the right, but not the obligation, to obtain the required insurance. Tenant shall promptly reimburse Landlord for the costs incurred, including the premium and other expenses, upon receipt of a statement for same from Landlord.

(f)     Form of Policies and Additional Requirements.    The insurance requirements set forth above are independent of Tenant's waiver, indemnification, and other obligations under this Lease and shall not be construed or interpreted in any way to restrict, limit or modify Tenant's waiver, indemnification and other obligations or to in any way limit Tenant's liability under this Lease. In addition to the requirements above, the insurance required of Tenant must be issued by an insurance company with a rating of no less than A-:VII in the current Best's Insurance Guide

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

13

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-D7BF2E382FDF

or A- in the current Standard & Poor Insurance Solvency Review and admitted to engage in the business of insurance in the state in which the Property is located. The general liability and excess coverage will be primary insurance for claims under it and provide that insurance carried by Landlord and Landlord's lenders is strictly excess, secondary and noncontributing with any insurance carried by Tenant. Tenant shall deliver to Landlord on the Effective Date (for liability policies) and on or before the Rent Commencement Date (for property insurance policies) and five (5) days before the expiration date of any policy a certificate of insurance on all policies procured by Tenant in compliance with Tenant's obligations under this Lease. Tenant may comply with its insurance coverage requirements through a blanket policy, provided Tenant, at Tenant's sole expense, procures a "per location" endorsement, or equivalent reasonably acceptable to Landlord, so that the general aggregate and other limits apply separately and specifically to the Property.

(g)      Waiver of Subrogation. Tenant and Landlord each hereby release the other from any claim for damage to the Property, the Improvements or any Tenant Equipment or other Tenant personal property located therein that are caused by or result from risks insured against under any insurance policy carried by or required by this Lease to be carried by Tenant and in force at the time of the damage. Tenant shall cause each insurance policy obtained by it to provide that the insurance company waives all right of recovery by way of subrogation against Landlord in connection with any damage covered by the policy.

**14.      LANDLORD'S TITLE AND QUIET ENJOYMENT.** Landlord represents and warrants that as of the Effective Date (or if Landlord has the Property under contract for purchase, as of the date of Landlord's acquisition of the Property), Landlord has (or will have) indefeasible fee simple title with respect to a portion of the Property and an easement interest in the remainder of the Property, free and clear of all encumbrances and restrictions other than the encumbrances and restrictions set forth on the Title Commitment (as defined in *Exhibit B*) that are, following the process set forth in *Exhibit B*, Section 1, deemed "Permitted Encumbrances". Landlord covenants that so long as Tenant fulfills the conditions and covenants required of it to be performed, Tenant will have peaceful and quiet possession of the Property. Landlord further represents and warrants that Landlord will not cause or permit the Property to become subject to or encumbered by any covenants, conditions or restrictions of record, conflicts or exclusive uses which could in any manner whatsoever adversely affect or interfere with Tenant's Use.

**15.      DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS.**

(a)      Tenant shall be responsible, at its sole cost and expense, for making all repairs, reconstructions or replacements necessitated by any casualty damage to the Improvements from and after the first day of the Construction Period. Tenant shall be entitled to all proceeds of insurance and rights of recovery against insurers on policies covering such damage or destruction, which proceeds shall be used to reconstruct or repair the Improvements; provided, however, Tenant's responsibility shall not be limited to the proceeds actually received.

(b)      Notwithstanding anything in Section 15(a) above to the contrary, if, during the last two (2) years of the Primary Term or at any time during any Extension, the Building shall be damaged or destroyed by fire or other casualty to the extent that the cost to repair or rebuild shall

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

14

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

exceed Two Hundred Thousand and No/100 Dollars ($200,000.00), Tenant may, at Tenant's option, to be evidenced by notice in writing given to Landlord within sixty (60) days after the occurrence of such damage or destruction, elect to terminate this Lease as of the date of the damage or destruction and the parties shall be released from further liability under this Lease. In the event Tenant elects to terminate this Lease, Landlord shall be entitled to, and Tenant and Tenant's Leasehold Mortgagee (as defined in Section 18), if any, shall assign and/or pay over to Landlord, all proceeds of insurance and rights of recovery against insurers on policies covering such damage or destruction, and Tenant shall pay any applicable deductible or self-retention amounts, to in no event be equal to less than one hundred percent (100%) of the full replacement cost of the Building. Tenant shall, at the request of Landlord, demolish and remove all debris from the Property, and shall be entitled to insurance proceeds for same to the extent such insurance proceeds are available. This obligation shall survive the termination of this Lease.

(c)     Tenant is not entitled to any compensation or damages from Landlord for loss of use of the whole or any part of the Property, the Improvements, any of Tenant's Equipment, or for any inconvenience or annoyance occasioned by the damage or destruction or the restoration thereof, except to the extent caused by Landlord's or its agents' gross negligence or willful misconduct. Except as expressly set forth in this Section 15, Tenant expressly waives any statutory or other right now or hereafter in force to abate rent or terminate this Lease in the event of damage or destruction of all or any portion of the Property or the Improvements.

**16.     LIENS.** Landlord and Tenant each covenant with the other not to permit any judgment, attachment and/or lien to be filed against the Property as a result of the covenanting party's acts or omissions except for any liens permitted pursuant to Sections 10, 17 and 18 of this Lease. Should any judgment, attachment and/or lien of any nature be filed against the Property, except pursuant to Sections 10, 17 or 18 of this Lease, the party causing or permitting the lien shall within thirty (30) days after receiving written notice of the filing thereof cause such judgment, attachment and/or lien to be removed. Notwithstanding anything contained herein to the contrary, Tenant shall have the right to contest the validity or amount of any lien by posting reasonable security with Landlord until such dispute has been resolved.

**17.     TENANT'S EQUIPMENT AND SUBORDINATION OF LANDLORD'S LIEN.**

(a)     Any personal property, equipment, furniture, inventory, trademarked items, signs and other movable trade fixtures installed in or on the Property by Tenant, including, but not limited to, fryers, grills, sinks and preparation tables (collectively, "Tenant's Equipment"), shall remain the property of Tenant. However, Tenant's Equipment does not include the HVAC, plumbing, or electrical systems, any walk-in coolers or freezers, supply and exhaust fans, air ducts, hoods, vents, built-in sinks, built-in countertops, lighting poles and pylon and/or monument signage (excluding panels), or other property permanently affixed to the Property, all of which are intended to be permanent parts or otherwise permanently incorporated into the Improvements. Landlord agrees that Tenant shall have the right, at any time or from time to time, to remove any and all of Tenant's Equipment. Tenant, at its expense, shall immediately repair any damage occasioned by the removal of Tenant's Equipment and upon expiration or earlier termination of this Lease, shall leave the Property in a neat and clean condition, normal wear and tear excepted.

C0787- MERRILLVILLE, IN
GROUND LEASE

15

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F82B61C7-2026-4D10-94C3-D7BF2E382FDF

Tenant shall pay before delinquency all taxes, assessments, license fees and public charges levied, assessed or imposed upon its business operation in the Property as well as upon Tenant's Equipment. If any such items of property are assessed with property of Landlord, then such assessment shall be equitably divided between Landlord and Tenant.

(b) From time to time, some or all of Tenant's Equipment may be financed or owned by someone other than Tenant. To the extent that any of Tenant's Equipment is financed or owned by someone other than Tenant, Landlord agrees that such Tenant's Equipment is not Landlord's property no matter how the same is affixed to the Property or used by Tenant and agrees to recognize the rights of the lender, owner, secured creditor or lessor of Tenant's Equipment ("Secured Party"). Landlord hereby agrees to subordinate its Landlord's lien to the rights of the Secured Party with respect to Tenant's Equipment and agrees to sign and deliver to any such Secured Party a subordination in commercially reasonable form after written request at any time during the Term. Landlord also agrees that all of Tenant's Equipment that is not subject to an interest from Secured Party shall be the property and remain the property of Tenant or Tenant's assignee or transferee no matter how the same is affixed to the Property. In the event Tenant (or a Secured Party) requires Landlord to execute any subordination documents in relation to any rights of a Secured Party in connection with Tenant's Equipment, Tenant shall pay Landlord One Thousand Five Hundred and No/100 Dollars ($1,500.00) to reimburse Landlord for its costs associated with the preparation and review of such documentation.

**18.     LEASEHOLD MORTGAGE**.  Tenant may mortgage, collaterally assign or otherwise encumber the Improvements, any Tenant's Equipment or any other leasehold interest that Tenant has in this Lease ("Leasehold Mortgage") as security for any indebtedness. Tenant shall not mortgage or encumber Landlord's fee title to the Property.  Landlord shall execute such commercially reasonable instruments as may be required by each mortgagee or collateral assignee of a Leasehold Mortgage ("Leasehold Mortgagee") in order to subordinate the rights and interest of Landlord in the Improvements, Tenant's Equipment or any other leasehold interest of Tenant to the lien of any Leasehold Mortgage. In the event Tenant (or a Leasehold Mortgagee) requires Landlord to execute any documents in relation to any Leasehold Mortgage, Tenant shall pay Landlord One Thousand Five Hundred and No/100 Dollars ($1,500.00) to reimburse Landlord for its costs associated with the preparation and review of such documentation.

**19.     TENANT ASSIGNMENT AND SUBLETTING**.

(a) Tenant, without Landlord's approval written or otherwise, but with thirty (30) days' prior notice to Landlord by Tenant, shall have the absolute right to assign, sublease or otherwise transfer its interest in this Lease to (i) an Affiliate of Tenant, (ii) a corporation or other entity with which Tenant may merge, (iii) any Leasehold Mortgagee, or (iv) any entity to whom Tenant sells a majority of its restaurant locations in the particular region in which the Property is located. In addition, Tenant, without Landlord's approval, written or otherwise, shall have the absolute right to sublet to a licensee or franchisee of Tenant or of an Affiliate of Tenant. For purposes of this Section 19, "Affiliate" shall mean any person or entity controlling Tenant, controlled by Tenant, or under common control with those controlling Tenant, and "controlling" shall mean having greater than fifty percent (50%) of the ownership or voting power of such entity. Notwithstanding

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

any assignment, transfer or subletting made pursuant to this subsection (a), however, Tenant shall remain liable for all of its obligations under this Lease.

(b)      Landlord's prior written consent shall be required for any assignment or sublease not provided for in Section 19(a) above. The consent by Landlord to any other transfer, assignment or subletting shall not be unreasonably withheld, conditioned or delayed; provided, however, if Landlord fails to respond to any request by Tenant for Landlord's consent or approval within thirty (30) days of such request, then Tenant shall send a second notice to Landlord, which second notice shall advise Landlord in large, bold, red letters that if Landlord fails to respond to such second request within ten (10) days thereafter, Landlord's consent shall be deemed given.  Tenant shall not be released from its obligations under this Lease accruing from and after the date of any assignment or transfer (but not sublease) approved or deemed approved by Landlord pursuant to this Section 19(b).

(c)      In giving notice to Landlord under Section 19(a) above, or in requesting Landlord's consent under Section 19(b) above, Tenant must provide Landlord with at least thirty (30) days' prior written notice of the proposed assignment or subletting, including the identity of the proposed transferee, current financial statements of the proposed transferee, and the material terms of the assignment or subletting.  Any assignment or subletting, regardless of whether Landlord's consent is required, must be evidenced by a written instrument in form satisfactory to Landlord in which the transferee assumes and agrees to observe and perform all terms and conditions applicable to Tenant under this Lease, which instrument must be executed by Tenant and the transferee, and an original thereof delivered to Landlord.  The consent by Landlord to any assignment or subletting does not release Tenant from the obligation, if applicable, to obtain the consent of Landlord to any further assignment or subletting.

**20.      LANDLORD ASSIGNMENT**.  Landlord shall have the right to transfer, assign and convey, in whole or in part, any or all of the right, title and interest in the Property, and be relieved and released from all liability under this Lease thereafter accruing, provided such transferee, assignee or grantee shall be bound by the terms, covenants and agreements herein contained and shall expressly assume and agree to perform the covenants and agreements of Landlord herein contained.  Landlord shall provide advance written notice to Tenant of such assignment.  This Lease is not affected by any sale, transfer, assignment or disposal of Landlord's interest, and Tenant agrees to attorn to Landlord's purchaser or assignee.  This Lease may be assigned by Landlord to Landlord's Lender as security, without notice.  Any SNDA or estoppel requests associated with such transfer or assignment shall be processed as set forth in Section 10 and Section 28, respectively.

**21.      PARKING AND CROSS ACCESS**.  Cross-parking and cross-access through the Shopping Center shall be afforded to the Property pursuant to that certain Declaration of Easements, Covenants and Conditions recorded on January 30, 1979 in the Recorder's Office as Instrument No. 513561, as modified by Supplemental Agreement recorded on January 30, 1979 in the Recorder's Office as Instrument No. 513565, as modified by Amendment to Declaration of Easements, Covenants and Conditions recorded on March 20, 1987 in the Recorder's Office as Instrument No. 907788, as modified by Supplemental Agreement recorded on March 20, 1987 in

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

the Recorder's Office as Instrument No. 907791, as modified by Supplemental Agreement recorded on September 27, 1989 in the Recorder's Office as Instrument No. 059964, and as modified by Second Amendment to Declaration of Easements, Covenants and Conditions with Attached Consents recorded on August 17, 1994 in the Recorder's Office as Instrument No. 94059148.

## 22.  TENANT'S DEFAULT.

(a)  If Tenant fails to (i) pay any Rent or other sum due hereunder within ten (10) days after Tenant's receipt of written notice by Landlord that such payment is delinquent (with no more than two (2) such notices required in any one Lease Year), or (ii) perform any non-monetary covenant or agreement contained in this Lease within thirty (30) days after receipt of written notice of default by Landlord (or such additional period, if any, as may be reasonably required to cure the failure of performance if the non-monetary default cannot reasonably be cured within such 30-day period, provided that Tenant commences to cure the failure within such 30-day period and thereafter diligently pursues such cure to completion), Landlord may, in addition to any other right or remedy available at law or in equity, without further notice or demand, pursue any one or more of the following remedies:

(A)  re-enter the Property, after obtaining a judgment entered against Tenant specifically providing Landlord with such authority if required by applicable law, retake and exclude Tenant from possession, and re-let the Property, using commercially reasonable efforts therefor, and receiving the rent therefrom, applying the same first to the payment of all costs and expenses, including attorney fees and real estate commissions, second to the payment of Rent accruing hereunder, with the balance, if any, to be held by Landlord and applied in payment of future Rent as the same may become due and payable; but Tenant shall remain liable for the equivalent of the amount of all Rent reserved herein less the receipts of re-letting, if any, and such amount shall be due and payable to Landlord as damages or Rent, as the case may be, on the successive days Rent is otherwise due under this Lease, and Landlord may recover such amount periodically on such successive days;

(B)  terminate this Lease and resume possession of the Property thereby wholly discharging Tenant from all obligations under this Lease except for delinquent Rent, all costs and expenses, including attorney fees incurred for such termination, and all damages Landlord may incur by reason of Tenant's default, including, without limitation (1) any expenses incurred by Landlord in connection with obtaining possession of the Property, (2) actual costs of removing any of Tenant's Equipment or property of persons claiming under Tenant (including, without limitation, warehouse charges), (3) actual and reasonable costs attributable to putting the Property into the condition in which Tenant is required to return the Property at the end of the Term, (4) costs and fees related to any reletting, including, without limitation, reasonable attorneys' fees and brokers' fees, and (5) the worth

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-D7BF2E382FDF

at the time of such termination of the excess, if any, of the amount of Rent and charges equivalent to Rent reserved in this Lease for the remainder of the Term over the then reasonable rental value of the Property for the remainder of the Term, all of which amounts are immediately due and payable from Tenant to Landlord at Landlord's election;

(C)     enter the Property and do or perform any act required to effect compliance with Tenant's obligations under this Lease, the costs of which constitute Additional Rent payable by Tenant to Landlord upon demand; and/or

(D)     prosecute and maintain an action or actions, as often as Landlord deems advisable, for collection of Rent, other charges and damages (but in no event for consequential, special or punitive damages) as the same accrue, with or without entering into possession and without terminating this Lease. No judgment obtained constitutes a merger or otherwise bars prosecution of subsequent actions for Rent and other charges and damages as they accrue.

No act or conduct of Landlord, whether consisting of reentry, taking possession or reletting the Property, obtaining appointment of a receiver, accepting the keys to the Property, executing on any judgment, or otherwise, prior to the expiration of the Term, constitutes an acceptance by Landlord of the surrender of the Property or an election to terminate this Lease unless Landlord exercises its election under subsection (B) above in writing. Such acceptance or election by Landlord may only be effected, and must be evidenced, by written acknowledgment of acceptance of surrender or notice of election to terminate signed by Landlord. No notice from Landlord or notice given under a forcible entry and detainer statute or similar law constitutes an election by Landlord to terminate this Lease unless such notice specifically so states. If Landlord shall elect to terminate this Lease, all rights and obligations of Tenant relating to the unexpired portion of this Lease shall cease. Within ten (10) days after receipt by Tenant of notice of election by Landlord to terminate this Lease, the parties shall, by an instrument in writing, in recordable form, terminate this Lease and Tenant shall surrender and deliver to Landlord the Property, including the Improvements. Upon any default by Tenant in so doing, Landlord shall have the right to re-enter the Property by summary proceedings or similar proceedings, and Landlord agrees to use commercially reasonable efforts to mitigate damages and relet the Property.

(b)     Subject to the provisions of applicable law, neither bankruptcy, insolvency, nor the appointment of a receiver or trustee shall be considered a default under this Lease so long as the obligations of Tenant are performed by Tenant, its successors or assigns.

(c)     Independent to the remedies set forth in subsection (a) above, in the event Tenant does not pay any monetary amounts on the due date thereof, and if such amounts remain outstanding ten (10) days after written notice of such delinquency is provided to Tenant by Landlord (with no more than two (2) such notices required in any one Lease Year), Tenant shall pay interest to Landlord on such delinquent amounts, calculated from the original due date thereof, at the maximum lawful interest rate or ten percent (10%) per annum, whichever is less, until the date full payment of the delinquent amounts and such interest are received by Landlord. In the

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-202B-4D10-94C3-078F2E382FDF

event interest is owed pursuant to the preceding sentence, Tenant shall also pay to Landlord a late charge equal to ten percent (10%) of the delinquent amount.  Late charges and interest are in addition to all other rights and remedies for late payment set forth in this Lease, Landlord and Tenant agreeing that late payment by Tenant will cause Landlord to incur other costs not contemplated in this Lease, the exact amount of which will be extremely difficult and impracticable to ascertain.

(d)     Except as expressly set forth in this Lease, no right or remedy available to Landlord or Tenant is exclusive of any other, but all such rights and remedies are cumulative and in addition to every other right or remedy provided under this Lease or now or hereafter existing at law or in equity.  Except as expressly set forth in this Lease, all rights and remedies may be exercised singly, jointly, or in such combination as a party determines in its sole discretion.  No delay or failure of a party in exercising any right or remedy arising from any default impairs such right or remedy, or constitutes a waiver of any such default or an acquiescence therein by such party.  No failure of Landlord to timely submit any statement, if any, to Tenant required by this Lease constitutes a waiver of Tenant's obligation to pay the amount that would have been shown by such statement. The acceptance or endorsement by Landlord of any payment or check from Tenant does not constitute an accord and satisfaction or prejudice Landlord's right to recover the balance of any amounts due under the terms of this Lease.  By performing obligations of Tenant, Landlord does not waive the performance of such obligations by Tenant.  No waiver by Landlord or Tenant of the breach of this Lease by the other party constitutes a waiver of any preceding or succeeding breach, and the acceptance of Rent during any period in which Tenant is in default in any respect, other than the payment of Rent, does not constitute a waiver of such default by Landlord.  No provision of this Lease may be waived by Landlord or Tenant unless the waiver is in writing, signed by the party to be charged with such waiver.

(e)     Tenant is responsible for assuring that persons occupying the Property do not violate this Lease.  Accordingly, a breach of any provision of this Lease by any invitee, sublessee or other person occupying any portion of the Property, whether by act or omission, continuing uncured after notice and expiration of applicable grace period constitutes, at Landlord's option, an event of default by Tenant under this Lease.

## 23.     LANDLORD'S DEFAULT.

(a)     If Landlord is in default in performing any of the terms or provisions of this Lease and Landlord fails to cure such default within thirty (30) days after receipt of written notice from Tenant stating the nature and extent of the default (or such additional period, if any, as may be reasonably required to cure the failure of performance if the default cannot reasonably be cured within such 30-day period, provided that Landlord commences to cure the failure within such 30-day period and thereafter diligently pursues such cure to completion), Tenant shall have the right to enforce the provisions of this Lease and may enforce and protect the rights of Tenant hereunder by a suit or suits in equity or at law for the specific performance of any covenant or agreement contained herein, including, but not limited to, the recovery of any damages (excluding consequential, punitive or special damages) incurred by Tenant in connection with such default.

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

(b)     Notwithstanding anything in this Lease to the contrary, Tenant agrees to look solely to the estate and property of Landlord in the Property, and subject to the prior rights of any Landlord's Lender, for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or breach by Landlord under this Lease or otherwise, and no other property or assets of Landlord are subject to levy, execution, or other procedures for the satisfaction of Tenant's remedies.

**24.     CONDEMNATION**.  From and after the Effective Date, Tenant shall have the following rights in the event of a taking of the entire Property or any part thereof, by reason of any exercise of the power of eminent domain, including any transfer in lieu thereof:

(a)     In the event of a taking of the entire Property or a material portion as would render the balance of the Property not suitable for Tenant's Use, this Lease shall terminate upon the date that possession is surrendered to the condemning authority, at which time all rights and obligations between the parties shall cease and Rent and other charges payable by Tenant under this Lease shall be apportioned.  For purposes of this Section 24, "material portion" shall mean the taking of any part of the Building, the taking of any part of the drive-through lane, the taking of a portion of the existing parking area on the Property such that the Property is no longer code-compliant as a self-parked lot, or the taking of all rights of access or ingress and egress, including, without limitation, the drive aisles within the Property, as then established without suitable and reasonably equivalent replacements for same.

(b)     In the event of a taking of less than the entire Property, or of a non-material portion such that the balance of the Property remains suitable for Tenant's Use, Tenant shall be entitled to reduction of Rent equal to the product derived from multiplying the then current Ground Rent times a fraction, the numerator of which is equal to the square footage taken and the denominator of which is the square footage of the Property prior to the taking.

(c)     The proceeds of any condemnation award shall be divided between Landlord and Tenant in accordance with the applicable laws of the state in which the Property is situated and as their respective interests may appear; provided, however, the awards or payment on account of a partial taking or condemnation of the Property shall be Landlord's, except that Tenant shall be entitled to that portion of the award or payment otherwise payable to Landlord as is necessary for Tenant to satisfy its obligation to restore the Property to reasonably suitable condition. Notwithstanding any law, statute or ordinance or provision of this Lease which provides that the Improvements may be or shall become the property of Landlord at the termination of this Lease, the loss or reduction of the Building and Improvements paid for or pursuant to this Lease owned by Tenant, the loss of Tenant's leasehold estate and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made. In no event shall Tenant's reimbursement reduce the amount otherwise recoverable form the condemning authority by Landlord.

(d)     Should Landlord and Tenant be unable to agree as to the division of any singular award or the amount of any reduction of Rent or other charges payable by Tenant under this Lease,

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

21

Copy from re:SearchTX

such dispute shall be submitted for resolution to the court exercising jurisdiction of the condemnation proceedings, each party bearing its respective costs for such determination.

(e)     Landlord represents and warrants that at the Effective Date, to Landlord's knowledge, with no independent investigation or inquiry, Landlord has not received written notice of any proposed condemnation or road or access changes or impairment to the visibility of the Property, including, but not limited to, turn restrictions, barriers or medians, overpasses, underpasses or bypasses, that would affect the Property or Tenant's Use of any part of the Property.

(f)     In the event that subsequent to the Effective Date, but prior to the expiration of the Construction Period, any competent authority proposes (i) a total or partial condemnation of the Property or of an abutting road or access drive, or (ii) material and adverse changes or impairment to the visibility of the Property that would materially, adversely affect the Property or Tenant's Use, then Tenant shall be under no obligation to commence or continue construction of the Improvements, and the Inspection Period, Permit Period or Construction Period, as applicable, shall toll until such time as it can be reasonably ascertained that the Property shall not be so affected, in Tenant's sole discretion, provided, however, that such tolling shall not exceed ninety (90) days, following which, Tenant shall proceed with its due diligence, permitting or construction, as the case may be, or terminate this Lease by providing written notice to Landlord of same. In the event the Property is so affected, Tenant shall have the option to recover all rights, damages and awards pursuant to the appropriate provisions of this Section 24 as to its leasehold interest and to the cost of any Improvements, as well as any other amounts to which it may be due under local law. Upon any such termination, Tenant shall remove any Improvements made by Tenant upon Landlord's written request and at Tenant's cost, but only to the extent Tenant receives any award in connection with the taking.

**25.     COSTS AND ATTORNEYS' FEES**. If Landlord or Tenant shall bring any action against the other, arising out of this Lease, the prevailing party shall be reimbursed by the other party for reasonable attorneys' fees and costs incurred in such suit, at trial and on appeal, and such attorneys' fees and costs shall be deemed to have accrued on the commencement of such action.

**26.     NOTICES**. All notices, demands, or other communications of any type given by Landlord to Tenant or by Tenant to Landlord, whether required by this Lease or in any way related to the transaction contracted for herein, shall be void and of no effect unless given in accordance with the provisions of this Lease. In addition, all notices given by Landlord to Tenant shall include copies to Leasehold Mortgagee, if any, and all notices of default given by Tenant to Landlord shall also be given to Landlord's Lender, if any. All notices shall be legible and in writing and shall, except as specifically provided otherwise herein, (a) be delivered personally to the addressee, (b) be sent by a recognized overnight courier service for next day delivery, or (c) be sent by electronic mail. Notices sent in compliance with this Section 26 shall be effective (i) upon receipt or refusal if delivered personally; (ii) one (1) business day after depositing with such an overnight courier service; or (iii) on confirmation of delivery of the electronic mail if delivered by electronic mail. Regardless of the method of delivery, an email shall be sent to Tenant at the time any notice is sent to Tenant by Landlord by other method of delivery. Either party hereto may change the address for notice and the person to whom notices are sent specified above by giving the other party ten

Plaintiff's Original Petition - Page 041

Copy from re:SearchTX

(10) days advance written notice of such change of address. Notice by Landlord sent to the actual restaurant or to the general manager of the restaurant on the Property shall in no event be considered acceptable notice. If Landlord sends an invoice to Tenant for payment of any Ground Rent or Additional Rent due hereunder, an email of such invoice shall be sent to accountinginvoices@raisingcanes.com regardless of any other method of notice sent to the other Tenant notice parties.

## 27.  HAZARDOUS SUBSTANCES.

(a)  LANDLORD'S REPRESENTATIONS AND WARRANTIES.  Landlord represents and warrants to Tenant that:

(i)  Landlord has disclosed to Tenant to the best of Landlord's knowledge all prior uses of the Property;

(ii)  to the best of Landlord's knowledge, the Property does not presently contain and is free from all hazardous substances and/or wastes, toxic and nontoxic pollutants and contaminants including, but not limited to, petroleum products and asbestos ("Hazardous Substances"); and

(iii)  Landlord has not received and is not aware of any notification from any federal, state, county or city agency or authority relating to Hazardous Substances, in or near the Property.

(b)  LANDLORD'S RESPONSIBILITY.  Landlord shall be responsible for and shall indemnify, defend (with counsel selected by Landlord and reasonably approved by Tenant) and hold harmless Tenant and its respective members, owners, nominees, officers, directors, agents, employees, successors, assigns, affiliates, subsidiaries and parent companies (if any) from and against any and all liability, including without limitation the cost of any remediation, fines or penalties to the extent arising from any and all claims, demands, litigation, or governmental action (but not including consequential damages) involving any Hazardous Substances located on the Property prior to the Actual Delivery Date.

(c)  TENANT'S RESPONSIBILITY. Tenant shall comply at all times during the Term of this Lease (including during the Construction Period) with all laws, rules and regulations relating to Hazardous Substances on the Property.  Tenant shall not bring any Hazardous Substances onto the Property other than those used customarily in Tenant's operations and in all events in the quantities and in the manner prescribed by law. Tenant shall be responsible for and shall indemnify, defend (with counsel selected by Tenant and reasonably approved by Landlord) and hold harmless Landlord and its respective members, owners, nominees, officers, directors, agents, employees, successors, assigns, affiliates, subsidiaries and parent companies (if any) from and against any and all liability, including without limitation the cost of any remediation, fines or penalties arising from any and all claims, demands, litigation, or governmental action (but not including consequential damages) involving any Hazardous Substances originating on the

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

23

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Property from and after the Actual Delivery Date, through the expiration or earlier termination of this Lease, resulting from the operations of Tenant on the Property.

**28.    ESTOPPEL CERTIFICATE.**  Tenant and Landlord agree at any time and from time to time, upon not less than ten (10) business days' prior written request from the other party, to execute, acknowledge and deliver an estoppel certificate, in substantially the form of **Exhibit G** attached hereto to the requesting Party or the requesting Party's prospective purchaser, lender, subtenant, assignee or any entity which is a party to a potential merger, consolidation with or to the acquisition of substantially all of the assets or stock of Landlord or Tenant. In the event either party shall fail to execute and deliver any such instrument within the foregoing time period as requested, the requesting party shall send a completed estoppel certificate, along with a second request, which request shall state in bold, capitalized letters that the completed estoppel shall be deemed accurate if the party to whom it is sent does not respond to address any inaccuracies within 10 (10) business days after receipt of the second request. Upon the passing of such 10-day period without response from the party to whom the estoppel certificate is so sent, the estoppel certificate shall be deemed accurate and may be relied upon by the requesting party or its designee. The party requesting the estoppel certificate under this Section 28 shall pay the other party Five Hundred and No/100 Dollars ($500.00) to reimburse such party for its costs associated with the preparation, review and processing of same; provided, however, there shall be no charge for the first estoppel certificate request made to Tenant hereunder following the Effective Date.

**29.    INDEMNIFICATION.**  Each party hereby indemnifies and holds the other party and its respective nominees, officers, directors, agents, employees, successors and assigns harmless from and against any and all claims, demands, liabilities, and expenses, including attorneys' fees and litigation expenses, arising from the negligence or willful acts or omissions of the indemnifying party or its agents, employees, or contractors occurring on the Property, except to the extent caused by the indemnified party's negligent or willful acts or omissions. In the event any action or proceeding shall be brought against either party by reason of any such claim, the other party shall defend the same at the indemnifying party's expense by counsel selected by the indemnifying party and reasonably approved by the other party.

**30.    REPRESENTATIONS AND WARRANTIES.**  As of the date of execution and delivery of this Lease:

(a)    Each of Landlord and Tenant hereby represents and warrants to the other that the warranting party has full capacity, right, power and authority to execute, deliver and perform this Lease and all documents to be executed by it pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. The individuals signing this Lease and all other documents executed or to be executed pursuant hereto on behalf of the warranting party are and shall be duly authorized to sign the same on such party's behalf and to bind such party thereto. This Lease and all documents to be executed pursuant hereto by the warranting party are and shall be binding upon and enforceable against such party in accordance with their respective terms.

(b)    Landlord represents and warrants that the transaction contemplated hereby will not result in a breach of, or constitute a default or permit acceleration of maturity under, any indenture,

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 043

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-07BF2E382FDF

mortgage, deed of trust, loan agreement or other agreement to which Landlord or the Property is subject or by which Landlord or the Property is bound.

(c)     Landlord represents and warrants there are no claims, causes of action or other litigation or proceedings pending or, to the best of Landlord's knowledge, threatened in respect to the ownership, operation or environmental condition of the Property or any part thereof (including disputes with mortgagees, governmental authorities, utility companies, contractors, adjoining land owners or suppliers of goods or services), except for claims which are fully insured and as to which the insurer has accepted defense without reservation.

(d)     Tenant acknowledges that except as expressly provided in this Lease, neither Landlord nor any agent of Landlord has made any representation or warranty with respect to the Property, or with respect to the suitability or fitness of the Property for the conduct of Tenant's business or for any other purpose.

(e)     All representations, warranties and indemnities contained in this Lease shall survive the termination or expiration of this Lease.

**31.    RIGHT OF FIRST OFFER.** Notwithstanding anything contained herein to the contrary, from and after the Effective Date, in the event Landlord desires to sell any portion of the Property which Landlord owns at the time of such contemplated sale ("ROFO Property"), Tenant shall have a Right of First Offer to purchase the ROFO Property ("ROFO") pursuant to the process set forth in this Section 31. For avoidance of doubt, this Section 31 shall not be applicable to the sale of the Shopping Center.

(a)     Prior to marketing the ROFO Property as a parcel separate from the land within the Shopping Center owned by Landlord for sale, Landlord shall give Tenant written notice ("Offer Notice") of the terms upon which Landlord intends to offer the ROFO Property for sale ("Offer Terms"). Tenant shall have ten (10) business days to respond to Landlord, in writing, as to whether or not Tenant elects to purchase the ROFO Property on the Offer Terms; provided, however, if the Offer Notice is delivered to Tenant more than ten (10) business days prior to the end of the Permit Period, then Tenant shall have until the end of the Permit Period to respond as to whether or not Tenant elects to purchase the Property on the Offer Terms.

(b)     Should Tenant fail to give timely notice of its exercise of its ROFO as provided in Section 31(a) above or elects not to exercise its ROFO, Landlord may at any time thereafter market the ROFO Property for sale to any third party on such terms of the initial Offer Terms; provided, however, upon Landlord's receipt of any Bona Fide Offer (as defined in Section 32(a) below), then the procedure outlined for Tenant's ROFR as defined and described in Section 32 below shall be followed.

(c)     Notwithstanding the foregoing, if Landlord receives a counter-offer to purchase the ROFO Property from Tenant within the applicable time period for Tenant to respond to an Offer Notice pursuant to Section 31(a) above, then Landlord shall in good faith consider the terms and conditions of such counter-offer. If such counter-offer is rejected by Landlord, after Landlord's

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

25

Plaintiff's Original Petition - Page 044

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2028-4D10-94C3-078F2E382FDF

good faith consideration, then Landlord shall be free to market the ROFO Property for sale to any other party on such terms of the initial Offer Terms; provided, however, upon Landlord's receipt of any Bona Fide Offer (as defined in Section 32(a) below), then the procedure outlined for Tenant's ROFR as defined and described in Section 32 below shall be followed.

(d)     If Tenant exercises its ROFO in accordance with one of the above applicable provisions of this Section 31, then Landlord will sell the ROFO Property to Tenant on the Offer Terms, whether as initially presented to Tenant or as revised pursuant to the provisions of this Section 31, and Tenant will purchase the ROFO Property within thirty (30) days from the date Tenant exercises its ROFO or the date called for in the Offer Terms, whichever comes earlier, provided Landlord's title is free and clear of any liens and encumbrances, except the lien of current taxes and liens created by Tenant.

(e)     For the avoidance of doubt, this ROFO will terminate and expire on any sale, conveyance or transfer of the ROFO Property, and not apply to any proposed sale, conveyance or transfer by a successor owner of the ROFO Property. The provisions of this Section 31 are personal to the original Tenant and any Affiliate as defined in Section 19(a) of this Lease and are not subject to transfer or assignment to any other third party.

(f)     In no event shall any brokers, including (without limitation) those who have been involved in the negotiation of this Lease, be entitled to a commission or other fee in the event of a sale of the ROFO Property by Landlord to Tenant. Notwithstanding anything set forth in this Lease to the contrary, any pending acquisition of the Property by means of foreclosure, deed in lieu of foreclosure or other proceeding brought to enforce a deed of trust, mortgage or encumbrance in favor of Landlord's Lender shall not be subject to the ROFO set forth in this Section 31.

**32.     RIGHT OF FIRST REFUSAL.** Notwithstanding anything contained herein to the contrary, from and after the Effective Date and throughout the Term, Tenant shall have a Right of First Refusal to purchase any portion of the Property which Landlord owns at the time of such contemplated sale ("ROFR Property") pursuant to the process set forth in this Section 32 ("ROFR"). For avoidance of doubt, this Section 32 shall not be applicable to the sale of the entire Shopping Center.

(a)     Landlord is obligated to present to Tenant, any written, bona fide offer to purchase the ROFR Property as a parcel separate from the land within the Shopping Center owned by Landlord from a prospective purchaser which bona fide offer Landlord wishes to accept, including, without limitation, any bona fide offer to purchase the ROFR Property following Tenant's failure or refusal to exercise the ROFO set forth in Section 31 above ("Bona Fide Offer"). The Bona Fide Offer shall be in the form of a purchase contract or a letter of intent to purchase. Tenant shall have ten (10) business days to respond to Landlord, in writing, as to whether or not Tenant elects to purchase the ROFR Property in accordance with the provisions of this Section 32.

(b)     Should Tenant fail to give timely notice of its exercise of its ROFR in accordance with Section 32(a) above or elects not to exercise its ROFR, Landlord may proceed to accept or reject the Bona Fide Offer at its discretion; provided, however, if Landlord does not close on the

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Bona Fide Offer within six (6) months after the date Tenant fails to timely exercise its ROFR or Tenant elects not to exercise its ROFR, then Landlord shall be required to re-present the Bona Fide Offer or any future new Bona Fide Offer to Tenant, in which case Tenant shall have ten (10) business days to respond to Landlord, in writing, as to whether or not Tenant elects to purchase the ROFR Property in accordance with the provisions of this Section 32.

(c)     For purposes of this Section 32, the "ROFR Purchase Price" shall mean  the purchase price amount set forth in the Bona Fide Offer and any other costs or expenses to be paid by such prospective third party purchaser pursuant to the Bona Fide Offer; provided, however, if Landlord receives an unsolicited offer from a third party to purchase the ROFR Property (i.e., Landlord is not marketing the ROFR Property for sale and yet receives a Bona Fide Offer to purchase from a third party), and if the purchase price reflected in such unsolicited Bona Fide Offer is inclusive of or otherwise takes into account a brokerage commission for the prospective purchaser's broker, then in such event, the ROFR Purchase Price applicable to Tenant shall be net of such brokerage commission, and Landlord's notice to Tenant of the Bona Fide Offer shall explicitly set forth the net ROFR Purchase Price applicable. By way of example only, in the event Landlord receives an unsolicited Bona Fide Offer from a third party to purchase the ROFR Property and the purchase price is $2,000,000 and the commission for which Landlord is required to pay buyer's broker is 2%, i.e., $40,000, then the net ROFR Purchase Price shall be $1,960,000.

(d)     If Tenant exercises its ROFR in accordance with one of the above applicable provisions of this Section 32, then Landlord will sell the ROFR Property to Tenant for the net ROFR Purchase Price (this net ROFR Purchase Price will also apply to any new unsolicited Bona Fide Offers or a revision to an existing unsolicited Bona Fide Offer as per the requirements to re-present a Bona Fide Offer as set forth above), and Tenant will purchase the ROFR Property within thirty (30) days from the date Tenant exercises its ROFR or the date called for in the Bona Fide Offer, whichever comes later, provided Landlord's title is free and clear of all liens and encumbrances, except the lien of current taxes and liens created by Tenant.

(e)     For the avoidance of doubt, this ROFR will continue to apply to any proposed sale by a successor owner of the ROFR Property. If Tenant exercises its ROFR in accordance with the provisions of this Section 32, Tenant shall have the right to assign its right to purchase the ROFR Property to a third party, in Tenant's sole discretion; provided, however, any such assignment shall not release Tenant of its obligation to purchase the ROFR Property for the net ROFR Purchase Price pursuant to the terms provided for herein.

(f)     Notwithstanding anything set forth in this Lease to the contrary, any pending acquisition of the Property by means of foreclosure, deed in lieu of foreclosure or other proceeding brought to enforce a deed of trust, mortgage or encumbrance in favor of Landlord's Lender shall not be subject to the ROFR set forth in this Section 32.

## 33.     MISCELLANEOUS.

(a)     Any and all discussions and negotiations between Landlord and Tenant have been merged into this Lease. No rights are conferred upon either party until this Lease has been

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 046

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

executed by both Landlord and Tenant. Any and all representations and agreements by either of the parties or their agents made during negotiations prior to execution of this Lease and which representations are not contained in this Lease shall not be binding upon either of the parties. No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by both parties hereto.

(b)     Landlord shall pay a real estate commission to JLL Midwest, LLC ("Tenant's Broker") pursuant to a separate agreement. Landlord and Tenant hereto represent and warrant to each other that they have not had any other dealings with real estate brokers, finders or agents other than Tenant's Broker and agree to indemnify, defend and hold each other harmless from any claims, costs, commissions, fees or damages by any other person or firm claiming to have negotiated, instituted or brought about this Lease.

(c)     All terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any portion of this Lease may require, the same as if such words had been fully and properly written in the number and gender.

(d)     This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed original, but such counterparts together shall constitute but one and the same instrument. Execution of a faxed or other electronic copy of this Lease, including through platforms like DocuSign and Digi-Ink and in a file in PDF or similar format, shall be deemed an original.

(e)     Landlord and Tenant are not and shall not be considered joint venturers or partners and neither shall have power to bind or obligate the other except as set forth in this Lease.

(f)     Intentionally deleted.

(g)     If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

(h)     This Lease shall be binding upon and inure to the benefit of the parties, any subtenants and their heirs, administrators, executors, successors and assigns.

(i)     Time is of the essence of this Lease and each provision; provided, however, if, pursuant to this Lease, any date or deadline indicated herein or calculated hereby, including, without limitation, the commencement date of any period, falls on a day that is not a business day, with exception only to the Rent Commencement Date, the date so indicated shall mean the next business day following such date. The term "business day" as used throughout this Lease shall mean normal working business days (i.e., Monday through Friday of each calendar week),

C0787-MERRILLVILLE, IN
GROUND LEASE

28

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-84C3-07BF2E382FDF

exclusive of Federal holidays as published by the U.S. Office of Personnel Management (www.opm.gov).

(j)     If Tenant or Landlord is delayed or prevented from performing any of its obligations under this Lease by reason of strike, lockouts, labor troubles, supply shortages, extraordinary weather conditions, unavailability of materials, failure of power, riots, insurrection, war, contagious or infectious disease outbreaks or other public health emergencies (such as, but not limited to, epidemics, pandemics or imposition of quarantine, shelter in place or stay at home restrictions or orders by any governmental authority), acts of God or any other cause beyond Tenant's or Landlord's control, the period of such delay or such prevention shall be deemed added to the time period herein provided for the performance of any such obligation by Tenant or Landlord. In the event any such force majeure event occurs during the Inspection Period, Permit Period or Construction Period, then such affected period shall be extended by the number of days that such delay occurred. Tenant's lack of funds or inability to pay shall in no event excuse Tenant from the prompt payment of Rent after the commencement of the Term of this Lease.

(k)     This Lease shall be governed by and construed and interpreted in accordance with the laws of the state in which the Property is located, excluding its conflict of law principles.

(l)     Each party hereto has reviewed and revised (or requested revisions of) this Lease, and therefore any usual rules of construction requiring that ambiguities are to be resolved against a particular party shall not be applicable in the construction and interpretation of this Lease or any Exhibits hereto.

(m)     Landlord acknowledges that any plans or specifications of Tenant and Tenant's trademarks and service marks, including without limitation, "Raising Cane's" and "Raising Cane's Chicken Fingers" are the sole property of Tenant, as the case may be, and Landlord shall not have any rights to same.

(n)     Neither Tenant nor Landlord and their agents, representatives, employees, partners, officers and directors will disclose the subject matter or terms of the transaction contemplated by this Lease except to their respective employees, attorneys, accountants, brokers, financial advisors, lending institutions or prospective transferees unless prior written consent to such disclosure is obtained from the other party, which consent may be withheld at that party's sole discretion.

(o)     Without limiting in any way the provisions of any other Section of this Lease, Tenant's business on the Property will, at Tenant's discretion, be closed each year on the following holidays: New Year's Day, Martin Luther King Jr. Day, Mardi Gras Day (New Orleans area, Baton Rouge LA, and Mobile AL), Easter Sunday, Memorial Day, July 4th - Independence Day, Labor Day, Thanksgiving Day, Christmas Day, and a Sunday in December to be determined annually for the Company Christmas Party. Further, Tenant's business on the Property will, at Tenant's discretion, be closed early on the following days each year: Christmas Eve, New Year's Eve, and Super Bowl Sunday. Tenant reserves the right to change such holiday schedules from time to time in its sole discretion.

C0787- MERRILLVILLE, IN
GROUND LEASE

29

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2D2B-4D10-84C3-07BF2E382FDF

(p)     It is intended that this Lease is a net lease to Landlord, and that, except as otherwise expressly provided in this Lease, Landlord is not responsible during the Term for any costs, charges, expenses or outlays arising from or relating to the Property, the contents, use or occupancy thereof, or the business carried on therein.

(q)     Landlord may at reasonable times during the business hours of Tenant, and after providing no less than seventy-two (72) hours prior notice to Tenant, enter the Property for any lawful purpose, but not so as to unreasonably interfere with the business of Tenant on the Property. At any time that Landlord is in the kitchen or non-public areas of the Building, Landlord shall be accompanied by Tenant's manager on duty.

(r)     LANDLORD AND TENANT, TO THE EXTENT PERMITTED BY LAW, WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR RELATING TO, THIS LEASE AND ANY OTHER TRANSACTION CONTEMPLATED HEREBY. THIS WAIVER APPLIES TO ANY ACTION, SUIT OR PROCEEDING WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE.

(s)     Tenant and Landlord (each, a "Representing Party") each represents and warrants to the other that:

(i)     neither the Representing Party nor any person or entity that directly owns a ten percent (10%) or greater equity interest in it nor any of its officers, directors or managing members is a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including Executive Order 13224 (the "Executive Order") signed on September 24, 2001 and entitled *Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism*), or other governmental action;

(ii)     the Representing Party's activities do not violate the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders promulgated thereunder (as amended from time to time, the "Money Laundering Act"); and

(iii)     throughout the Term of this Lease the Representing Party shall comply with the Executive Order and with the Money Laundering Act.

[SIGNATURES FOLLOW ON SEPARATE PAGES]

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-07BF2E382FDF

**EXECUTED** by Landlord on the date set forth below.

LANDLORD:

**CROSSINGS AT HOBART-I, LLC,**
a Delaware limited liability company

By: _____

Name: Mark S. Ungar

Title: Executive Vice President
    Leasing & Development

Date: 7/29/2021 _____

C0787- MERRILLVILLE, IN
GROUND LEASE

31

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 050

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

**EXECUTED** by Tenant on the date set forth below.

TENANT:

**RAISING CANE'S RESTAURANTS, L.L.C.,**
a Louisiana limited liability company

By: _____
      Bryan L. Brown
      Chief Development Officer

Date: 7/23/2021

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT A

### LEGAL DESCRIPTION OF THE PROPERTY

Approximately 50,600 square feet (1.16 acres) of property located at the address commonly known as 2487 E. 80th Ave., Merrillville, Indiana, as shown in the Site Plan attached to this Lease as *Exhibit B-1*.

**(Property description will be substituted upon receipt of final survey.)**

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

A-1

Plaintiff's Original Petition - Page 052

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT A-1

## SITE PLAN OF THE SHOPPING CENTER



C0787- MERRILLVILLE, IN
GROUND LEASE

A-1-1

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 053

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT B

## DEVELOPMENT AND CONSTRUCTION

**1.    TITLE INSURANCE.**

(a)    Within ten (10) days after the first day of the Inspection Period, Tenant may order a title insurance commitment on the Property and any property to be used by Tenant under this Lease (the "Title Commitment") prepared by a title company selected by Tenant. Tenant shall pay for any cost incurred in searching title, obtaining the Title Commitment, contemporaneously with the issue thereof, and the cost of any Leasehold Title Insurance Policy approved by Tenant, with any title endorsements required by Tenant in its sole discretion. The Title Commitment shall reflect that Tenant has legal access to the Property in accordance with Tenant's needs and that Tenant will be insured against loss or damage from and after the Effective Date. The Property and any property to be used by Tenant under this Lease shall be leased to Tenant free, clear and unencumbered of all tenancies and parties in possession on the Effective Date.

(b)    In the event the Title Commitment shall reflect encumbrances or other conditions not acceptable to Tenant, including but not limited to access to the Property, in accordance with Tenant's needs ("Defects"), then Tenant shall notify Landlord of the Defects within thirty (30) days following the later of (i) Tenant's receipt of the Title Commitment or (ii) the first day of the Inspection Period. Landlord shall have ten (10) business days from the date of notice of Defects to notify Tenant whether or not Landlord elects to cure such Defects. Landlord shall then have thirty (30) days from the date of its response to the notice of Defects (but in no event later than the day before the last day of the Inspection Period) within which to cure the Defects to Tenant's satisfaction, if Landlord so elects to cure. If, after the exercise of all reasonable diligence, Landlord is unable to remove or obtain a title endorsement over the Defects, then Tenant may accept the Defects (together with any encumbrances or other conditions in the Title Commitment to which Tenant does not object, "Permitted Encumbrances") or if prior to the end of the Inspection Period, Tenant may terminate this Lease and the parties shall be released from further liability hereunder.

**2.    INSPECTION PERIOD.**

(a)    Tenant's obligation to lease the Property is contingent on Tenant's determination, in Tenant's sole discretion, prior to the end of the Inspection Period, that the Property is satisfactory for Tenant's Use. In order to make this determination, Tenant shall have the right, during the Inspection Period, to make all inspections and assessments of the Property, including but not limited to, environmental assessments and soils reports, and to have a survey prepared of the Property, all at Tenant's sole expense. Except for geotechnical borings for purposes of slab engineering, to which Landlord hereby consents so long as Tenant gives Landlord advance written notice of when Tenant intends to conduct such geotechnical borings and uses commercially reasonable efforts to coordinate the scheduling and performance of such geotechnical borings with Landlord, in no event shall Tenant conduct any other invasive testing on the Property without Landlord's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Provided Tenant finds the Property suitable for Tenant's Use, Tenant shall begin

C0787- MERRILLVILLE, IN
GROUND LEASE

B-1

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-84C3-07BF2E382FDF

preparation of its plans and specifications for Tenant's construction. Landlord shall provide to Tenant, within five (5) days after the Effective Date, all existing surveys, maps, environmental reports and soils reports and a copy of Landlord's title policy for the Property in Landlord's possession pertaining to the Property.

(b)     Landlord hereby grants to Tenant, its agents and contractors, the right to enter upon the Property to make the inspections referenced above. Tenant shall hold Landlord harmless from and indemnify and defend Landlord against any loss, damage or personal injury occurring by Tenant, its contractors, agents or employees entering upon the Property for these purposes. Tenant will restore any damage to the Property caused by Tenant's entry on the Property.

(c)     Tenant has provided Landlord with a site plan of the Property set forth on ***Exhibit B-1*** (the "Site Plan") and site specific elevation plans as set forth on ***Exhibit B-2*** (the "Elevations") and sign elevation plans as set forth on ***Exhibit B-3*** (the "Sign Elevations"), which Site Plan, Elevations and Sign Elevations are hereby approved by Landlord. The Site Plan, Elevations and Sign Elevations may be referred to herein as "Tenant's Plans". Any material changes made to Tenant's Plans by Tenant after the Effective Date shall require Tenant to resubmit same to Landlord for its continued approval; provided, however, such resubmission and confirmation shall not be required in the event the change in Tenant's Plans is required by the applicable governing authority. Landlord hereby confirms and represents that no third party approvals of Tenant's Plans are required, except as are expressly set forth in this Lease or as may be required by applicable governmental authorities. In no event shall any building and/or architectural elements exceed twenty-two (22) feet from ground level.

(d)     Notwithstanding anything in this Lease to the contrary, if Tenant, in its sole discretion, determines the Property is for any reason, or no reason, not suitable for Tenant's Use, then Tenant may terminate this Lease prior to 5:00 p.m. Central time on the last day of the Inspection Period by providing written notice to Landlord, and the parties shall have no further obligation to each other hereunder.

## 3.     PERMIT PERIOD.

(a)     During the Permit Period, Tenant will promptly apply for and diligently pursue all approvals, permits, easements and licenses ("Permits") for Tenant's Use in accordance with Tenant's plans and specifications therefor, including, without limitation, signage, trade dress, satellite dish, curb cuts, access, parking, outdoor seating, drive-through and the Building as required by Tenant. In the event that the Property is restricted by any state, local, municipal or other governmental law, ordinance, rule or regulation which prohibit, limit or restrict the use of the Property for Tenant's Use, Tenant, at its sole cost and expense, shall have the right to seek variances and authorizations ("Authorizations") so that the Property may be used for Tenant's Use or, solely at Tenant's option, Tenant may terminate this Lease in accordance with subsection (g) below. Landlord agrees to cooperate fully with Tenant in securing the Authorizations and Permits and grants permission to Tenant to make application for the Authorizations and Permits in the name of Landlord; provided, such application is at no cost to Landlord. Landlord shall execute any necessary documents in connection with Tenant's application for the Authorizations

C0787- MERRILLVILLE, IN
GROUND LEASE

B-2

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 055

Copy from re:SearchTX

DocuSign Envelope ID: F92561C7-2026-4D10-84C3-07BF2E382FDF

and Permits. The determination of the necessity for obtaining the Authorizations and Permits and the adequacy of the Authorizations and Permits granted shall be within the sole discretion of Tenant.

(b)     Tenant shall have the right, as permitted by applicable law and ordinances, to erect independent signage on the Property, in conformance with the site specific Sign Elevations. Tenant shall have the right at any time after the beginning of the Construction Period to post "Raising Cane's Coming Soon" and "Grand Opening" signs on the Property as shown on *Exhibit B-3* attached hereto, subject to compliance with applicable law. All of Tenant's signs, window advertising and other displays shall be of professional quality and shall be consistent and compatible with a first class shopping center. Under no circumstances shall Tenant place hand-lettered advertising on any window or door of the Building or anywhere on the exterior of the Building. No exterior identification signs attached to any building of the Shopping Center shall be of the following type: (i) flashing, moving or audible signs; (ii) exposed neon tubes, exposed ballast boxes, or exposed transformers, provided that Tenant shall have the right to employ any methods necessary for the installation of internally illuminated self-contained channel letters and further provided that such signs shall be permitted if a part of a national tenant's protoypical signage; or (iii) paper or cardboard signs other than professionally prepared interior window signs advertising special sales within the subject building, temporary signs (exclusive of contractor signs and professionally prepared "grand opening" banners), stickers or decals, provided, however, the foregoing shall not prohibit the placement at the entrance of each such building of (A) small stickers or decals which indicate hours of business, emergency telephone numbers, credit cards accepted, and other similar information, and/or (B) a sticker or decal which contains the phrase "no solicitation" or words of like import. All signs of Tenant shall be subject to and shall comply at all times with applicable governmental requirements. Tenant agrees to maintain all signs in good condition and repair.

(c)     If the Property must be replatted from a larger tract owned by Landlord or to combine multiple tracts owned by Landlord in order for Tenant to obtain any of its Permits or Authorizations to construct or operate within the Improvements, Landlord shall bear the costs of all such replatting, including all engineering costs related thereto. The replatting shall be undertaken and completed by Tenant during the Permit Period, and in the event the replatting is not complete by the last day the Permit Period despite Tenant's commercially reasonable good faith efforts to complete same or otherwise for reasons outside of Tenant's control, then the Permit Period shall be extended day to day pending completion, and Tenant shall continue to diligently pursue same. Landlord shall cooperate with Tenant with respect to all applications for replatting and shall reimburse Tenant for the cost of such replatting within twenty (20) days after receipt of an invoice for same from Tenant. If Landlord fails to pay such costs when due, Tenant shall be allowed to deduct such costs from its payments of Ground Rent until fully recovered.

(d)     If development of the Property for Tenant's Use requires offsite easements for utilities, drainage or access to be located on Landlord's remaining or adjacent property, Landlord agrees to grant such easements, using commercially reasonable efforts and in commercially reasonable form, within thirty (30) days after Tenant's request, provided that such easements shall be located on Landlord's remaining or adjacent property in areas already utilized for easements or

C0787- MERRILLVILLE, IN
GROUND LEASE

B-3

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92581C7-2026-4D10-94C3-07BF2E382FDF

otherwise in such locations as shall not unreasonably interfere with the usage of Landlord's remaining or adjacent property. If development of the Property for Tenant's Use requires any licenses or rights of entry to be granted by the fee owner of the Property to a utility provider or governmental authority within the boundary of the Property to effect the development of the Property or for the benefit of Tenant's Use, then Landlord shall execute any documents containing commercially reasonable terms which are required to grant such rights thereto, provided that any obligations or liability of the fee owner under such documents shall be Tenant's responsibility during the Term of this Lease.

(e)     Intentionally omitted.

(f)     Prior to delivery of the Property to Tenant, Landlord shall cause the applicable account holder (whether it be Landlord, Landlord's seller or an existing or prior tenant of Landlord) to arrange for the complete removal of all metered utilities including, without limitation: removal of utility meters; gas and electric service lines disconnected at the point of entry to the Property (for gas, disconnection of gas lines at a gas tap at the street or other utility provider disconnect point and for electricity, disconnection at the primary service point, a pole mounted transformer or ground mounted transformer); water line disconnect/cap at boundary of Property (collectively, "Landlord's Utility Disconnection"). Any costs of Landlord's Utility Disconnection shall be borne by Tenant.

(g)     Notwithstanding anything in this Lease to the contrary, if Tenant, in its sole discretion, determines during the Permit Period that the Authorizations and Permits will not be granted for Tenant's Use on the Property, despite Tenant's good faith, commercially reasonable attempts to obtain same, then Tenant may terminate this Lease prior to 5:00 p.m. Central time on the last day of the Permit Period, as it may have been extended, by providing written notice to Landlord, and the parties shall have no further obligation to each other hereunder.

(h)     Unless this Lease is terminated pursuant to subsection (g) above, Landlord shall deliver the Property to Tenant on the day after the last day of the Permit Period, or earlier if requested in writing by Tenant (as applicable, the "Required Delivery Date") free and clear of all other tenancies and parties in possession with Landlord's Work complete as set forth on *Exhibit B-4* ("Landlord's Work"). If Landlord fails to deliver the Property to Tenant in the condition required under this subsection (h) by the Required Delivery Date, subject to delays solely caused by any governmental authorities or due to force majeure, then Tenant shall be entitled to reduce Ground Rent, beginning on the Rent Commencement Date, by an amount equal to Two Thousand Five Hundred and No/100 Dollars ($2,500.00) for each day after the Required Delivery Date that delivery of the Property in the condition required under this subsection (h) is delayed. The date that Landlord has delivered possession of the Property to Tenant with Landlord's Utility Disconnection pursuant to subsection (f) above completed and all of Landlord's Work substantially completed pursuant to the terms of *Exhibit B-4* shall be the "Actual Delivery Date". In no event shall Landlord be deemed to have delivered the Property to Tenant prior to the Required Delivery Date absent written request from Tenant for such early delivery.

C0787- MERRILLVILLE, IN
GROUND LEASE

B-4

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-07BF2E382FDF

## 4.   IMPROVEMENTS.

(a)   During the Construction Period, Tenant may construct the Improvements and remove all existing improvements (if applicable), including building and pavement, as required for new construction, all in accordance with Tenant's Plans.  Except as set forth in Section 15(b) and Section 24(f) of this Lease, Tenant shall not be required to demolish or remove the Improvements from the Property upon the expiration or earlier termination of this Lease.  All Improvements constructed by Tenant shall conform to and comply with all applicable codes, laws, ordinances, and regulations, including, without limitation, all applicable building, fire, and life safety codes, all applicable codes, laws, ordinances, and regulations relating to handicapped accessibility, and all environmental laws.  During the construction of the Improvements, Tenant will either maintain Builder's Risk Insurance or cause its general contractor to carry Builder's Risk Insurance.  Once commenced Tenant shall diligently pursue construction of the Improvements through completion. Notwithstanding anything contained herein to the contrary, Tenant shall not be permitted to build, construct or improve any building outside of the building envelope on the Property depicted on *Exhibit B-6* attached hereto.

(b)   Tenant shall indemnify, release and hold Landlord harmless from all expenses, liens, claims or damages to either persons or property arising out of or resulting from construction occurring on the Property by Tenant or its agents or contractors during the Construction Period, including without limitation, materialman's and mechanic's liens.

(c)   Any security deposit, account setup deposit, transfer fees or similar charges required by any utility company to transfer utilities to Tenant at or prior to the commencement of the Term must be paid by Tenant.

(d)   Notwithstanding anything set forth in this Lease to the contrary, Landlord shall be solely responsible for reimbursing NIPSCO for all costs and expenses incurred, assessed or charged against Landlord, Tenant or the Property in connection with NIPSCO's use of an inspector pursuant to the Parking Lot and Building Easement, and shall indemnify, release and hold Tenant harmless from such costs and expenses.

## 5.   DELAYS IN DEVELOPMENT AND CONSTRUCTION (COVID-19 CLAUSE).

(a)   In the event that subsequent to the Effective Date, but prior to the expiration of the Construction Period, Tenant's inspections or investigations of the Property, Tenant's pursuit of Permits and Authorizations for the Improvements, or Tenant's commencement or continuation of demolition or construction activity at the Property, as applicable at such time, is impractical or impossible due to public health-related events or emergencies, or pandemic or epidemic events, such as but not limited to COVID-19 (Coronavirus) or its derivatives, self-isolation, quarantine, shelter-in-place, requirements to work from home, travel or movement restrictions, restrictions or prohibitions on public or business activities, mandatory business or governmental authority closures, or the cancellation or delay of governmental authority, city, county or other regulative body meetings in the geographic area where the Property is located or in the geographic area of Tenant's home office or any regional offices of Tenant, its employees, consultants, vendors or

C0787- MERRILLVILLE, IN
GROUND LEASE

B-5

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-07BF2E382FDF

contractors which are engaged in the development of the Property ("Delay Event"), provided such Delay Event is required or triggered by an applicable governmental authority, then Tenant shall have the right to extend the then-current expiration date of the Inspection Period, Permit Period or Construction Period, as applicable, for up to sixty (60) days ("Delay Period") by delivering written notice to Landlord (which may be by email alone) including a reasonable explanation of the circumstances surrounding such Delay Event. At any time during the 60-day Delay Period, Tenant may terminate this Lease by providing written notice to Landlord of same.

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT B-1

## SITE PLAN OF THE PROPERTY



C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

B-1-1

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

**EXHIBIT B-2**

## ELEVATIONS FOR IMPROVEMENTS



Plaintiff's Original Petition - Page 061

Copy from re:SearchTX



C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

B-2-2

Plaintiff's Original Petition - Page 062

Copy from re:SearchTX

## EXHIBIT B-3

### SIGN ELEVATIONS

Exterior Building signs shall be as shown on the Elevations for Improvements set forth on *Exhibit B-2*.



C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

B-3-1

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

**BANNERS**







C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

B-3-2

Plaintiff's Original Petition - Page 064

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT B-4

### LANDLORD'S WORK

***Demolition:***  The Property has existing improvements. Tenant is responsible for removal of all existing surface and subsurface improvements.

***Pad Delivery of Property by Landlord***:  Landlord will deliver the Property free and clear of all other tenancies and parties in possession and free of all Hazardous Substances but otherwise in an "as-is" physical condition.

***Utilities***:  No Landlord Work obligations as to utilities.

C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

B-4-1

Plaintiff's Original Petition - Page 065

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF



**EXHIBIT B-5**

**TENANT SELF-HELP AREA**

C0787–MERRILLVILLE, IN
GROUND LEASE
1067700000103\4849-5655-2156v12

B-5-1

Plaintiff's Original Petition - Page 066

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT B-6

## BUILDING ENVELOPE



C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

B-5-1

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-D7BF2E382FDF

## EXHIBIT C

## MEMORANDUM OF LEASE

This Memorandum of Lease is by and between **CROSSINGS AT HOBART-I, LLC**, a Delaware limited liability company ("Landlord"), whose address is _____, and **RAISING CANE'S RESTAURANTS, L.L.C.**, a Louisiana limited liability company ("Tenant"), whose address is 6800 Bishop Road, Plano, Texas 75024, who hereby declare that Landlord has leased to Tenant, and Tenant has accepted such lease from Landlord, the Property (later defined) upon the following terms pursuant to that certain Ground Lease between Landlord and Tenant (the "Lease"):

Effective Date of Lease: _____.

Description of Property:  See Exhibit A attached hereto.

Primary Term:  Fifteen (15) Lease Years from the Rent Commencement Date.

Extension(s):  Five (5), five (5) year renewal options.

Right of First Refusal:  The Lease contains a right of first refusal in favor of Tenant, pursuant to the terms thereof.

Right of First Offer:  The Lease contains a right of first offer in favor of Tenant, pursuant to the terms thereof.

Landlord acknowledges and agrees that no property presently or hereafter owned, leased or controlled with a fifty-one percent (51%) or more ownership interest by Landlord or a Landlord Affiliate within the real property described on Exhibit B attached hereto and made a part hereof (the "Restricted Property") shall be sold, leased, managed, used or occupied for a fast food or quick service restaurant or food service establishment (including mobile or temporary food service trucks or kiosks) which prepares, serves or sells de-boned chicken products, such as, but not limited to, Chick-Fil-A, Abner's, Guthrie's, Zaxby's, PDQ, Slim Chickens, Layne's Chicken Fingers or any other restaurant or food chain which specializes in the sale of de-boned chicken products (a "Competing Use"); provided, however, the Restricted Property may be used as or sold or leased for use as a restaurant specializing in the sale of bone-in chicken wings or a sports-bar-themed restaurant even though such establishment prepares, serves or sells de-boned chicken products, or a restaurant or food service establishment (including mobile or temporary food service trucks or kiosks) which prepares, serves or sells de-boned chicken products, so long as such sales are incidental to the sale of its other products.  As used herein, the term "incidental" shall mean that any such owner, tenant or occupant shall not derive more than forty percent (40%) of its annual gross sales from the sale of de-boned chicken products.  Notwithstanding anything to the contrary set forth herein, it shall not be a breach of this covenant (i) if any otherwise Restricted Property is used for a Competing Use as of the Effective Date of the Lease, but only for the term of such existing lease or occupancy agreement and provided Landlord or a Landlord Affiliate does not consent to a change of use under any existing lease or occupancy agreement that would result in

C0787- MERRILLVILLE, IN
GROUND LEASE                              C-1
106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92861C7-2026-4D10-94C3-07BF2E382FDF

use as a Competing Use, or (ii) if Landlord or a Landlord Affiliate subsequently acquires, leases, manages or controls otherwise Restricted Property that is then used for a Competing Use, which real property shall be expressly excluded from the restrictions set forth herein, but only for the duration of the use of such Restricted Property by the party utilizing same for the Competing Use at the time of Landlord's or Landlord Affiliate's acquisition.

In the event of a violation of the restricted covenants set forth herein by any owner, tenant, licensee or occupant of any portion of the Restricted Property, then Tenant shall be entitled to injunctive relief as well as all other remedies available at law or in equity.

The above covenants shall run with the Restricted Property and follow the Restricted Property; provided, however, in the event the Lease is terminated by either Landlord or Tenant as provided in the Lease, or Tenant's right to possession of the Property is terminated after Tenant's default continues uncured after notice and expiration of applicable grace period, the restriction contained herein shall become null and void and of no further force and effect. Landlord shall be subject to a continuing obligation to deliver documentation in recordable form to Tenant to bind any Restricted Property subsequently acquired, leased or controlled by Landlord or a Landlord Affiliate pursuant to the terms of the Lease.

Tenant has the right to mortgage, collaterally assign or otherwise encumber any leasehold interest that Tenant has in the Lease (each a "Leasehold Mortgage") as security for any indebtedness without obtaining the consent of Landlord upon the condition that all rights acquired under each such Leasehold Mortgage shall be subject to each and all of the terms, covenants, conditions and restrictions set forth in the Lease.

Capitalized terms not separately defined herein shall bear the meaning assigned thereto in the Lease.

## [SIGNATURES ON FOLLOWING PAGES]

Plaintiff's Original Petition - Page 069

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Executed by Landlord on the _____ day of _____, 20___.

LANDLORD:

**CROSSINGS AT HOBART-I, LLC,**
a Delaware limited liability company

By: _____
Name: _____
Its: _____

STATE OF _____   §
                          §
COUNTY OF _____    §

BEFORE ME, the undersigned authority, on this _____ day of _____, 20__, did personally appear _____, _____ of _____, a _____, who acknowledged this instrument and stated that he executed same on behalf of said _____.

_____
Notary Public, State of _____

Plaintiff's Original Petition - Page 070

Copy from re:SearchTX

DocuSign Envelope ID: F92561C7-2026-4D10-94C3-07BF2E382FDF

Executed by Tenant on the _____ day of _____, 20___.

TENANT:

**RAISING CANE'S RESTAURANTS, L.L.C.,**
a Louisiana limited liability company

By: _____
   Bryan L. Brown
   Chief Development Officer

STATE OF TEXAS      §
           §
COUNTY OF COLLIN    §

  BEFORE ME, the undersigned authority, on this _____ day of _____, 20___, did personally appear Bryan L Brown, Chief Development Officer of RAISING CANE'S RESTAURANTS, L.L.C., a Louisiana limited liability company, who acknowledged this instrument and stated that he executed same on behalf of said limited liability company.

_____
   Notary Public, State of Texas

C0787- MERRILLVILLE, IN
GROUND LEASE        C-4
106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Exhibit A to Memorandum of Lease

## LEGAL DESCRIPTION OF THE PROPERTY

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Exhibit B to Memorandum of Lease

## LEGAL DESCRIPTION OF RESTRICTED PROPERTY

[Landlord to provide]
OR
[None as of the Effective Date of the Lease]

C0787- MERRILLVILLE, IN
GROUND LEASE
106770\000103\4849-5655-2156v12

C-6

Plaintiff's Original Petition - Page 073

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT D

### LEASE TERM AND RENT SCHEDULE AGREEMENT

THIS AGREEMENT, effective as of _____, is entered into by and between **CROSSINGS AT HOBART-I, LLC**, a Delaware limited liability company ("Landlord"), and **RAISING CANE'S RESTAURANTS, L.L.C.**, a Louisiana limited liability company ("Tenant").

### W I T N E S S E T H:

WHEREAS, Landlord and Tenant have entered into that certain Ground Lease ("Lease") for the property located in Merrillville, Indiana, more particularly described on *Exhibit A* attached hereto and made a part hereof ("Property"); and

WHEREAS, Landlord and Tenant wish to set forth their agreement as to the commencement date and expiration date of the initial fifteen (15) year Primary Term of the Lease and the schedule of Tenant's Rent obligation.

NOW, THEREFORE, in consideration of the Property as described in the Lease and the covenants set forth therein, Landlord and Tenant agree as follows:

1. Effective Date of Lease: _____.

2. The Primary Term of the Lease is fifteen (15) Lease Years from the Rent Commencement Date of _____ to the expiration date of _____.

3. Tenant has five (5) options to renew the Term of the Lease for periods of five (5) years each.

4. The schedule of Tenant's Ground Rent obligation is as follows:

| | | |
|---|---|---|
| Lease Years 1–5: | per year | per month |
| Lease Years 6–10: | per year | per month |
| Lease Years 11–15: | per year | per month |
| Lease Years 16-20*: | per year | per month |
| Lease Years 21-25*: | per year | per month |
| Lease Years 26-30*: | per year | per month |
| Lease Years 31-35*: | per year | per month |
| Lease Years 36-40*: | per year | per month |

*Extension (if elected)

5. Capitalized terms not defined herein shall have the same meaning ascribed to such term in the Lease.

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 074

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

6.   This Agreement may be executed in counterparts, each of which, when taken together, shall constitute one and the same document.  A facsimile or electronic signature of either party shall constitute an original signature of such party for all purposes.

[SIGNATURES ON FOLLOWING PAGES]

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

D-2

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

IN WITNESS WHEREOF, Landlord has executed this Agreement effective as of the day and year first above written.

LANDLORD:

**CROSSINGS AT HOBART-I, LLC,**
a Delaware limited liability company

By: _____

Name: _____

Its: _____

Date Signed: _____

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

D-3

Plaintiff's Original Petition - Page 076

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

IN WITNESS WHEREOF, Tenant has executed this Agreement effective as of the day and year first above written.

TENANT:

**RAISING CANE'S RESTAURANTS, L.L.C.,**
a Louisiana limited liability company


By: _____

     Bryan L. Brown
     Chief Development Officer

Date Signed: _____

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

Exhibit A to Lease Term and Rent Schedule Agreement

LEGAL DESCRIPTION OF THE PROPERTY

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

D-5

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D70-94C3-07BF2E382FDF

## EXHIBIT E

### SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT (the "Agreement") is made and entered into as of the date of the last signatory hereto, by and between **RAISING CANE'S RESTAURANTS, L.L.C.**, a Louisiana limited liability company ("Tenant"), _____ ("Lender"), and **CROSSINGS AT HOBART-I, LLC**, a Delaware limited liability company ("Landlord").

### RECITALS:

WHEREAS, Landlord and Tenant executed a Ground Lease dated as of _____, 20___ (the "Lease"), a memorandum of which was recorded on _____, 20___ in the official records of _____ County, _____, as Instrument Number _____, covering certain premises therein described located on a parcel of real estate, a legal description of which is attached hereto and incorporated herein by this reference as **_Exhibit A_** (said parcel of real estate and the premises being sometimes collectively referred to herein as the "Property"); and

WHEREAS, Landlord has executed a _____ dated _____, 20___ and recorded on _____, 20___ in the official records of _____ County, _____, as Instrument Number _____, in favor of Lender (the "Deed of Trust"), payable upon the terms and conditions described therein; and

WHEREAS, it is a condition to the Deed of Trust that the Deed of Trust shall unconditionally be and remain at all times a lien or charge upon the Property, prior and superior to the Lease and to the leasehold estate created thereby; and

WHEREAS, the parties hereto desire to assure Tenant's possession and control of the Property under the Lease upon the terms and conditions therein contained.

NOW, THEREFORE, for and in consideration of the mutual covenants and premises herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by the parties hereto, the parties hereto do hereby agree as follows:

### AGREEMENT:

1. The Lease is and shall be subject and subordinate to the Deed of Trust, and to all renewals, modifications, consolidations, replacements and extensions thereof, and to all future advances made thereunder.

2. Should Lender become the owner of the Property, or should the Property be sold by reason of foreclosure, or other proceedings brought to enforce the Deed of Trust which encumbers the Property, or should the Property be transferred by deed in lieu of foreclosure (dation en paiement

C0787- MERRILLVILLE, IN
GROUND LEASE

E-1

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2D2B-4D70-84C3-D7BF2E382FDF

or giving in payment), or should any portion of the Property be sold under a trustee's sale, the Lease shall continue in full force and effect as a direct lease between the then owner of the Property resulting from the enforcement of the Deed of Trust and Tenant, upon, and subject to, all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining, including any extensions therein provided, and so long as Tenant is not in default under the terms of the Lease, Tenant's occupancy of the Property shall not be disturbed. Tenant does hereby agree to attorn to Lender or to any such owner as its landlord, and Lender hereby agrees that it will accept such attornment.

3.      Notwithstanding any other provision of this Agreement, Lender shall not be (a) liable for any default of any landlord under the Lease (including Landlord), except that Lender agrees to cure any default of Landlord that occurs or continues uncured from and after the date Lender forecloses the Property within thirty (30) days from the date Tenant delivers written notice to Lender of such continuing default, unless such default is of such a nature to reasonably require more than thirty (30) days to cure and then Lender shall be permitted such additional time as is reasonably necessary to effect such cure, provided Lender diligently and continuously proceeds to cure such default; (b) subject to any offsets or defenses which have accrued prior to the date of foreclosure, unless Tenant shall have delivered to Lender written notice of the default which gave rise to such offset or defense and permitted Lender the same right to cure such default as permitted Landlord under the Lease; (c) bound by any rent that Tenant may have paid under the Lease more than one (1) month in advance; (d) bound by any amendment or modification of the Lease hereafter made without Lender's prior written consent, except Landlord and Tenant may enter into non-material amendments to the Lease without Lender's consent and Lender shall be bound to such non-material amendments so long as such amendments do not (i) materially increase the obligations of Landlord, (ii) reduce the frequency or amount of rent payable under the Lease, or (iii) decrease the size of the Property; and (e) responsible for the return of any security deposit delivered to Landlord under the Lease and not subsequently received by Lender.

4.      If Lender sends written notice to Tenant to direct its rent payments under the Lease to Lender instead of Landlord, then Tenant agrees to follow the instructions set forth in such written instructions and deliver rent payments to Lender; however, Landlord and Lender agree that Tenant shall be credited under the Lease for any rent payments sent to Lender pursuant to such written notice.

5.      All notices which may or are required to be sent under this Agreement shall be in writing and shall be sent by overnight courier delivery, by certified or registered U.S. mail, postage prepaid, return receipt requested, or by electronic mail (provided that delivery by one of the other permitted methods is also made) and sent to the party at the address appearing below or such other address as any party shall hereafter inform the other party by written notice given as set forth above:

|  |  |
|---|---|
| Tenant: | Raising Cane's Restaurants, L.L.C. |
| | 6800 Bishop Road |
| | Plano, TX 75024 |
| | Attn: Real Estate Department |

C0787- MERRILLVILLE, IN
GROUND LEASE

E-2

106770\000103\4849-5655-2156v12

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2028-4D10-94C3-07BF2E382FDF

Email:  realestate@raisingcanes.com
Re:    C0787

With a copy to:    Dawn M. Rawls, Esq.
Rawls Law Firm, PLLC
315 S. Jupiter Road, Suite 200
Allen, TX 75002
Email: dawn@rawlslaw.com
Re:    C0787

Lender:    _____
_____
Email: _____

Landlord:    _____
_____
Email: _____

All notices delivered as set forth above shall be deemed effective three (3) days from the date deposited in the U.S. mail or the business day after deposit with the overnight courier service or upon receipt if by electronic mail (so long as the other method of delivery is also made).

6.    Said Deed of Trust shall not cover or encumber and shall not be construed as subjecting in any manner to the lien thereof any of Tenant's improvements or trade fixtures, furniture, equipment or other personal property at any time placed or installed in the Property.  In the event the Property or any part thereof shall be taken for public purposes by condemnation or transfer in lieu thereof or the same are damaged or destroyed, the rights of the parties to any condemnation award or insurance proceeds shall be determined and controlled by the applicable provisions of the Lease.

7.    This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors in interest, heirs and assigns and any subsequent owner of the Property secured by the Deed of Trust.

8.    Should any action or proceeding be commenced to enforce any of the provisions of this Agreement or in connection with its meaning, the prevailing party in such action shall be awarded, in addition to any other relief it may obtain, its reasonable costs and expenses, not limited to taxable costs, and reasonable attorney's fees.

9.    Unless required by applicable law, Tenant shall not be joined as a party/defendant in any action or proceeding which may be instituted or taken by reason of any default by Landlord in the performance of the terms, covenants, conditions and agreements set forth in the Deed of Trust.

C0787- MERRILLVILLE, IN
GROUND LEASE

E-3

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 081

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-07BF2E382FDF

[SIGNATURES ON FOLLOWING PAGES]

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103'4849-5655-2156v12

E-4

Plaintiff's Original Petition - Page 082

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

IN WITNESS WHEREOF, Lender has executed this Subordination, Non-Disturbance and Attornment Agreement on the _____ day of _____, 20___.

LENDER:

_____,

a _____

By: _____

Name: _____

Its: _____

STATE OF _____    §
                                §
COUNTY OF _____    §

BEFORE ME, the undersigned authority, on this _____ day of _____, 20___, did personally appear _____, _____ of _____, a _____, who acknowledged this instrument and stated that he executed same on behalf of said _____.

_____
Notary Public, State of _____

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

E-5

Copy from re:SearchTX

DocuSign Envelope ID: F92B81C7-2026-4D10-94C3-07BF2E382FDF

IN WITNESS WHEREOF, Tenant has executed this Subordination, Non-Disturbance and Attornment Agreement on the _____ day of _____, 20___.

TENANT:

**RAISING CANE'S RESTAURANTS, L.L.C.,**
a Louisiana limited liability company

By: _____
    Bryan L. Brown
    Chief Development Officer


STATE OF TEXAS          §
                        §
COUNTY OF COLLIN        §

BEFORE ME, the undersigned authority, on this _____ day of _____, 20___, did personally appear Bryan L. Brown, Chief Development Officer of RAISING CANE'S RESTAURANTS, L.L.C., a Louisiana limited liability company, who acknowledged this instrument and stated that he executed same on behalf of said limited liability company.


_____
Notary Public, State of Texas


C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

E-6

Plaintiff's Original Petition - Page 084

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D1C-94C3-07BF2E382FDF

**IN WITNESS WHEREOF**, Landlord has executed this Subordination, Non-Disturbance and Attornment Agreement on the _____ day of _____, 20___.

LANDLORD:

**CROSSINGS AT HOBART-I, LLC,**
a Delaware limited liability company

By: _____

Name: _____

Its: _____


STATE OF _____    §
                                                     §
COUNTY OF _____    §

    BEFORE ME, the undersigned authority, on this _____ day of _____, 20___, did personally appear _____, _____ of _____, a _____, who acknowledged this instrument and stated that he executed same on behalf of said _____.


_____
Notary Public, State of _____


C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

E-7

Plaintiff's Original Petition - Page 085

Copy from re:SearchTX

Exhibit A to Subordination, Non-Disturbance and Attornment Agreement

LEGAL DESCRIPTION OF THE PROPERTY

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

E-8

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

## EXHIBIT F

### INTENTIONALLY OMITTED

C0787- MERRILLVILLE, IN
GROUND LEASE

F-1

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 087

Copy from re:SearchTX

DocuSign Envelope ID: F92581C7-2026-4D70-94C3-07BF2E382FDF

## EXHIBIT G

## FORM OF ESTOPPEL CERTIFICATE

### Estoppel Certificate

**DATE**:

**TO:**        ("Addressee")

**FROM:**    ("Tenant/Landlord")

**LEASED PREMISES**: _____, as more particularly described on <u>Exhibit A</u> attached hereto ("Leased Premises").

As of the date of this Estoppel Certificate (the "Effective Date"), [Tenant/Landlord] hereby certifies to Addressee that to the personal and actual knowledge of the undersigned, authorized signatory for [Tenant/Landlord]:

1.     Tenant leases the Leased Premises pursuant to that certain Ground Lease dated _____ by and between _____, a _____ (or Landlord's predecessor in interest) ("Landlord") and Tenant (as may be amended or modified, the "Lease"). Other documents which amend or may affect the Lease include, but are not limited to: _____.

2.     The Lease is in full force and effect, and except as may be set forth in paragraph 1, above, the Lease has not been amended or assigned, and Tenant has not subleased the Leased Premises (or any part thereof).

3.     The Term of the Lease and Tenant's obligation to pay Rent have not commenced.

OR

The Rent Commencement Date was _____, 20\_\_\_. All Rent, charges or other payments due to Landlord under the Lease have been paid as of the Effective Date, including the monthly installment of Ground Rent for the period _____ through _____ in the amount of $_____. No Rent has been prepaid for more than one (1) month. Tenant has not been given any free rent, partial rent, rebates, rent abatements, or rent concessions of any kind, except as may be stated in the Lease.

4.     There is no security deposit provided for in the Lease, and none is contemplated by Landlord or Tenant.

5.     All payments under the Lease to be made by [Landlord/Tenant], to the Effective Date, have been satisfied, and as of the Effective Date [Tenant/Landlord] has no claims,

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

Plaintiff's Original Petition - Page 088

Copy from re:SearchTX

DocuSign Envelope ID: F92B61C7-2026-4D10-94C3-07BF2E382FDF

counterclaims, causes of action, defenses or setoffs against [Landlord/Tenant] arising from any payment due under the Lease.

**[IF TENANT ESTOPPEL AND IMPROVEMENTS ARE NOT COMPLETE]** Tenant acknowledges that all Improvements under the Lease are being constructed in accordance with the relevant plans and specifications and in compliance with all laws, codes, regulations and ordinances of any applicable governmental authority.

**[IF TENANT ESTOPPEL AND IMPROVEMENTS ARE COMPLETE]** Tenant acknowledges that all Improvements under the Lease have been fully completed in accordance with the plans and specifications contemplated in the Lease and that all bills incurred by Tenant in connection with the construction of the Improvements have been paid in full.

      6.    There are no existing defaults with respect to the Lease on the part of [Landlord/Tenant], and [Tenant/Landlord] has no claim against [Landlord/Tenant] or defense against [Landlord's/Tenant's] enforcement of the Lease and [Tenant/Landlord] is not currently offsetting against the Rent payable under the Lease by reason of such claim or defense or a default by [Landlord/Tenant] under the Lease.  If it is discovered by or disclosed to [Tenant/Landlord] after the Effective Date that there existed on the Effective Date any such default, claim or defense, or right of offset by reason thereof, that was not actually known to [Tenant/Landlord] on the Effective Date, such default, claim, defense or right of offset shall not be affected, waived or released by the issuance of this Estoppel Certificate, and [Tenant/Landlord] shall not be estopped from asserting the same.

      This Estoppel Certificate is given solely for the benefit of Addressee and may not be relied on or used by any other party.  Regardless of any inaccuracy or misstatement herein, this Estoppel Certificate shall not create liability on the part of [Tenant/Landlord] to any person or entity nor constitute a waiver with respect to any act of [Landlord/Tenant] for which approval by [Tenant/Landlord] was required but not sought or obtained, provided that, as between [Tenant/Landlord] and Addressee, [Tenant/Landlord] shall be estopped from denying the accuracy of this Estoppel Certificate.  As between Landlord (or Landlord's affiliates) and Tenant, in no event shall this Estoppel Certificate modify the Lease.

      [TENANT/LANDLORD]:

a _____

By: _____
Name: _____
Its: _____

C0787- MERRILLVILLE, IN
GROUND LEASE

106770\000103\4849-5655-2156v12

G-2

Plaintiff's Original Petition - Page 089

Copy from re:SearchTX

Exhibit A to Estoppel Certificate

LEGAL DESCRIPTION OF LEASED PREMISES

Copy from re:SearchTX